SMITH *v.* UNITED STATES.

No. 52.   Argued October 21–22, 1954.—Decided December 6, 1954.

*W. Arthur Garrity, Jr.* argued the cause for petitioner. With him on the brief were *Richard Maguire* and *Paul G. Counihan.*

*Marvin E. Frankel* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Holland, Ellis N. Slack* and *Joseph F. Goetten.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This is the third of the net worth cases and the first dealing with the Government's use of extrajudicial statements made by the accused. Petitioner and his wife were jointly tried on five counts charging them with willful attempts to evade and defeat their income taxes for the years 1946 through 1950. A motion for acquittal was granted as to the wife on all five counts, and as to petitioner on the fifth count (for the year 1950). The jury found petitioner guilty on the first four counts, and the conviction was affirmed by the Court of Appeals. 210 F. 2d 496. We granted certiorari in order to pass on the issues raised by the prosecution's use of defendant's extrajudicial statements. 347 U. S. 1010.

The Government's theory was that the increases in the net worth of petitioner and his wife exceeded their reported income for each of the prosecution years, and that these increments represented taxable income. The evidence tended to show that petitioner and his wife were persons of moderate means prior to 1945, and that toward the end of that year petitioner acquired a racing-news service. In the four succeeding years, the prosecution years here in issue, petitioner and his wife acquired a large amount of visible wealth in the form of bank accounts, real estate, securities, and other assets. The evidence, taken as a whole, tended to prove that petitioner and his wife had understated their income for the four-year period by over $190,000.

The issues in this case stem from a statement signed by the petitioner and delivered to the Government agents

along with a check, the latter supposedly representing the amount of tax he thought due and owing.[1]   The statement, a five-page document, included tables on petitioner's securities, prior tax returns, living expenses, and a listing of petitioner's assets for each of the years 1945 through 1949, showing changes in his net worth over the prosecution period.   While each of the pages was headed by the names of petitioner and his wife, the statement was signed only by the petitioner.   His signature appeared after a clause describing the listing of assets as "my true net worth for the period covered herein."

*Admissibility of the Statement.*

Petitioner contends that his net worth statement should not have been admitted in evidence because it was procured pursuant to an understanding between petitioner and a Government agent that the case would be closed and the petitioner granted immunity.   See *Wan* v. *United States,* 266 U. S. 1, 14; *Bram* v. *United States,* 168 U. S. 532, 542–543; *Wilson* v. *United States,* 162 U. S. 613, 622–623; *Sparf and Hansen* v. *United States,* 156 U. S. 51, 55. Petitioner's accountant, who carried on negotiations with this Government agent, testified that the agent had promised to close the case if the net worth statement and a check to cover the tax deficiency were forthcoming, and that he, the accountant, would never have submitted the statement had he not believed that the case would be closed on this basis.   The Government agent testified that he was aware of no such understanding and that he had made no promises to close the case.   After a pretrial hearing on petitioner's motion to suppress evidence, the trial judge refused to suppress the net worth statement.

[1] Although there had previously been discussion of a civil fraud penalty, this check was apparently meant to cover only the tax liability proper.

During the course of the trial, he refused to hold a hearing outside the presence of the jury to determine preliminarily the statement's admissibility. He submitted the issue to the jury with the instruction that they were to reject the statement, and all evidence obtained through it, if "trickery, fraud or deceit" were practiced on petitioner or his accountant.

The issue of fraud or deceit on the part of the Government agent was properly submitted to the jury, and the jury, in arriving at its general verdict, could have found from the conflicting evidence that no fraudulent inducement had been offered petitioner or his accountant. Petitioner cannot complain that he was denied a *voir dire*, cf. *United States* v. *Carignan*, 342 U. S. 36, since the trial judge had already held a hearing on this issue in passing on the pretrial motion to suppress evidence. Moreover, the only evidence offered by petitioner in seeking this hearing during the trial was the testimony of petitioner's accountant, evidence which had been heard in the pretrial hearing and was narrated again to judge and jury after the *voir dire* had been denied. Under these circumstances, it cannot be said that the refusal to hold a preliminary hearing deprived petitioner of any substantial right.

## Corroboration of Petitioner's Statement.

Petitioner's second major objection is that his net worth statement, as it related to his opening net worth, was not corroborated—or was insufficiently corroborated—by independent evidence. Petitioner's statement listed his opening net worth as follows:

| | |
|---|---:|
| Bank account | $1,079.60 |
| Residence | 12,000.00 |
| Automobile | 2,000.00 |
| Total assets | $15,079.60 |

The Government agents credited petitioner with a higher opening net worth:

| | |
|---|---|
| Cash in banks | $8,058.58 |
| Drug store partnership | 5,618.39 |
| Real estate | 18,600.00 |
| Furniture | 2,000.00 |
| Automobile | 2,000.00 |
| Total | $36,276.97 |

In determining these opening net worth figures, the Government agents relied in part on figures furnished by petitioner in his net worth statement and in other of his extrajudicial admissions—for the autos, the furniture, and one parcel of real estate. Any variation in these figures would not materially affect the result.[2] But petitioner further complains that the Government did not corroborate the negative implications of his net worth statement, that he did not have at the end of 1945 any substantial assets—for example, cash on hand—which were not reflected in his or the Government's net worth computation. The question presented, therefore, is whether there is sufficient independent evidence to corroborate petitioner's extrajudicial admission that he did not have sufficient assets at the starting point to account for the increases in net worth attributed to him in the prosecution years.

The general rule that an accused may not be convicted on his own uncorroborated confession has previously been recognized by this Court, *Warszower* v. *United States,* 312 U. S. 342; *Isaacs* v. *United States,* 159 U. S. 487; cf. *Miles* v. *United States,* 103 U. S. 304, 311–312, and has been consistently applied in the lower federal courts and

---

[2] The Government also relied on petitioner's admissions in establishing his living expenses during the prosecution years. But these do not bear on opening net worth and are therefore not fairly within the question presented. Moreover, the variation possible in these figures is too slight to affect the result in any significant respect.

in the overwhelming majority of state courts, 127 A. L. R. 1130; 7 Wigmore, Evidence, §§ 2070–2072. Its purpose is to prevent "errors in convictions based upon untrue confessions alone," *Warszower* v. *United States, supra,* at 347; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, *Bram* v. *United States, supra; Wilson* v. *United States, supra,* further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be "involuntary" within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made, Note, 28 Ind. L. J. 374. These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror. Nevertheless, because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them.

The first issue is whether the requirement of corroboration may properly be applied to the crime of tax evasion. The corroboration rule, at its inception, served an extremely limited function. In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the

154

violence, the so-called *corpus delicti*.   Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession.   But in a crime such as tax evasion there is no tangible injury which can be isolated as a *corpus delicti*.   As to this crime, it cannot be shown that the crime has been committed without identifying the accused.   Thus we are faced with the choice either of applying the corroboration rule to this offense and according the accused even greater protection than the rule affords to a defendant in a homicide prosecution, *Evans* v. *United States,* 122 F. 2d 461; *Murray* v. *United States,* 53 App. D. C. 119, 288 F. 1008, or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether.   We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, where the corroborative evidence must implicate the accused in order to show that a crime has been committed.   See, *e. g., Tabor* v. *United States,* 152 F. 2d 254; *United States* v. *Kertess,* 139 F. 2d 923; *Ercoli* v. *United States,* 76 U. S. App. D. C. 360, 131 F. 2d 354; *Pines* v. *United States,* 123 F. 2d 825; *Forte* v. *United States,* 68 App. D. C. 111, 94 F. 2d 236; *Tingle* v. *United States,* 38 F. 2d 573; *Wynkoop* v. *United States,* 22 F. 2d 799; *Daeche* v. *United States,* 250 F. 566.

The next problem presented is whether the statement here involved—the opening net worth—must be corroborated.   Although this statement was part of a document which may have admitted an understatement of taxable income, one of the elements of the crime of tax evasion, still it is clear that the statement is not a confession admitting to all the elements of the offense.   There is some uncertainty in the lower court opinions as to whether the corroboration requirement applies to mere admissions, see *United States* v. *Kertess, supra,* at 929; *Ercoli* v. *United*

*States, supra,* 76 U. S. App. D. C., at 362, 131 F. 2d, at 356. But see *Warszower* v. *United States, supra,* at 347. We hold the rule applicable to such statements, at least where, as in this case, the admission is made after the fact to an official charged with investigating the possibility of wrongdoing, and the statement embraces an element vital to the Government's case.[3] Cf. *Gulotta* v. *United States,* 113 F. 2d 683, assimilating admissions to confessions but failing to distinguish between admissions before and after the fact as required by the *Warszower* case. Accord, *Duncan* v. *United States,* 68 F. 2d 136; *Gordnier* v. *United States,* 261 F. 910.

The negative implications of petitioner's opening net worth admission formed the cornerstone of the Government's theory of guilt. Without proof that assets on hand at the beginning of the prosecution period did not account for the alleged net worth increases, the Government could not succeed. *Holland* v. *United States, ante,* p. 121. An admission which assumes this importance in the presentation of the prosecution's case should not go uncorroborated, and this is true whether we consider the statement an admission of one of the formal "elements" of the crime or of a fact subsidiary to the proof of these "elements." It is the practical relation of the statement to the Government's case which is crucial, not its theoretical relation to the definition of the offense.

Although we are unable to hold on this record that petitioner's statement was inadmissible, the evidence is sufficient to cast doubt on the accuracy of his admissions. The unreliability of the statement is illustrated by the great variance between its net worth calculation and the Government's computation, although petitioner's consist-

---

[3] Admissions given under special circumstances, providing grounds for a strong inference of reliability, may not have to be corroborated. Cf. *Miles* v. *United States, supra; State* v. *Saltzman,* 241 Iowa 1373, 44 N. W. 2d 24.

156

ent erring in his own favor made it not unreasonable for the Government to hold him to his word where it was to the Government's advantage. On the whole, the statement is one which should be carefully scrutinized in the light of the available independent evidence.

There has been considerable debate concerning the quantum of corroboration necessary to substantiate the existence of the crime charged. It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty. *Gregg* v. *United States,* 113 F. 2d 687; *Jordan* v. *United States,* 60 F. 2d 4; *Forte* v. *United States, supra; Daeche* v. *United States, supra.* But cf. *United States* v. *Fenwick,* 177 F. 2d 488. In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone, compare *Ercoli* v. *United States, supra,* and *Pines* v. *United States, supra,* with *Wynkoop* v. *United States, supra,* and *Pearlman* v. *United States,* 10 F. 2d 460, and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged, compare *Pearlman* v. *United States, supra,* and *Daeche* v. *United States, supra,* with *Pines* v. *United States, supra,* and *Forte* v. *United States, supra.* We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense "through" the statements of the accused. Cf. *Parker* v. *State,* 228 Ind. 1, 88 N. E. 2d 556.

Under the above standard the Government may provide the necessary corroboration by introducing substantial evidence, apart from petitioner's admissions, tending to show that petitioner willfully understated his taxable income. This may be accomplished by substantiating the opening net worth directly, since that figure, taken together with the remainder of the net worth computation, amply establishes a consistent understatement by petitioner of his taxable income; and from this the jury could infer willfulness. Two significant items of evidence tend to show that petitioner owned no assets at the starting point in excess of those attributed to him in the Government's statement. First, a Government official testified that petitioner had filed no income tax returns in the years 1936 through 1939, nontaxable returns for 1940 and 1942, a nonassessable return for 1943, a refundable return for 1944, and a taxable return for 1941. Second, the testimony of a Government agent, touching upon the economic activities of the petitioner in the years immediately preceding the prosecution period, disclosed that prior to 1941 petitioner had been employed as a manager of a racing-news service; that from 1941 to 1945 he worked in a package store for $40 a week; and that for a short time during this latter period his wife worked as a hairdresser. The agent's testimony, however, was based solely on the extrajudicial statements of the petitioner, and under the standard we have adopted these admissions must be corroborated by substantial independent evidence.[4] The

---

[4] They were made to officials after the offense had been committed. It may be questioned, though, whether these admissions were as basic to the Government's case as the statements concerning opening net worth, and whether they should therefore be exempted from the requirement of corroboration. But where a fact is sufficiently important that the Government adduces extrajudicial statements of the accused bearing on its existence, and then relies on its existence to sustain the defendant's conviction, there is need for corroboration. Cf. *United States* v. *Kertess, supra,* at 930.

tax returns adequately corroborate petitioner's statements as to his financial history, and we hold that the two together corroborate the opening net worth. The jury could find from this evidence that petitioner's resources prior to the prosecution years were such that he could not have amassed a greater store of wealth than the amount credited to him in the Government's net worth statement. This proof is buttressed somewhat by independent evidence that petitioner had bought a modest home in 1943 for $9,600, paying less than one-third in cash and the balance in installments, and by the fact that petitioner's wife, who held the bulk of the family's assets in her name, was a housewife through almost all of the preprosecution years with no significant independent sources of income.

But substantiating the opening net worth is just one method of corroborating these extrajudicial statements. Petitioner's admissions may also be corroborated by an entirely different line of proof—by independent evidence concerning petitioner's conduct during the prosecution period, which tends to establish the crime of tax evasion without resort to the net worth computations. The Government's evidence showed that coincident with petitioner's opening of the racing-news service, in which he kept no records, petitioner and his wife opened 9 new bank accounts, making their over-all total 14 accounts in 12 banks; that the money in these accounts, which amounted to only $8,000 at the beginning of the prosecution period, varied between $42,000 and $80,000 during the prosecution years; that brokerage accounts, opened by petitioner and his wife in 1947 and 1948 respectively, were worth $9,000 in 1947 and over $41,000 in 1948 and 1949; that petitioner and his wife made new investments in realty during the prosecution period, about $2,000 in 1946, over $14,000 in 1948, and $35,000 in 1949; that other substantial expenditures were made during the

prosecution years, $3,750 in U. S. Savings Bonds in 1946, a total investment of $4,768 in new cars in 1947 and 1948, and a $37,000 annuity payment and $3,750 mink coat in 1949. During these same years petitioner's declared income exceeded his living expenses by less than $3,000. These substantial expenditures, savings and investments might not, of themselves, suffice to support a conviction of tax evasion without evidence of a starting point indicating a lack of funds from which these payments might have come. But this conduct does corroborate the net worth statement by *tending* to show that the petitioner was understating his income during the prosecution years. We cannot say that there is so little relation between expenditures and income that the Government's proof of expenditures far in excess of reported income, coupled with proof of a business producing unrecorded amounts of income, fails to corroborate the charge that petitioner's earnings during the prosecution years exceeded his declared income.

We hold that under either of these two lines of proof sufficient corroboration was shown to permit the case to go to the jury. The circumstances leading up to petitioner's statement, and the failure of the facts shown therein to mesh with the other evidence adduced by the Government, imposed on the trial judge and the reviewing courts a duty of careful scrutiny. Nevertheless, the independent evidence was strong enough, we believe, to overcome these indicia of unreliability, and we accordingly

*Affirm.*