Anthony Julian, Boston, Mass., Norman A. Hubley, Asst. U. S. Atty., Winthrop, Mass., for the United States.

John J. Graham, Boston, Mass., for defendant.

**UNITED STATES of America**

v.

**George W. BREADY.**

**Crim. No. 56–137.**

United States District Court
D. Massachusetts.

Dec. 10, 1958.

ALDRICH, District Judge.

■ In his motion for acquittal n. o. v. defendant's principal contention is that his conviction was based solely on uncorroborated extra-judicial admissions. The charge was the bribing of a government employee not to perform his official duty. 18 U.S.C.A. § 201. The evidence, apart from the two statements of the defendant, warranted the following findings. One Smith was the property disposal officer at the Springfield Armory. On behalf of the government he was accustomed to selling scrap and salvage material to the defendant. On October 15, 1953, Smith received for immediate mutilation certain carbine receivers, whose serial numbers were identifiable. The defendant saw these and inquired of the yard supervisor if they were for sale and learned they were re-

quired to be destroyed. Defendant knew that it was Smith's responsibility to see that this was done. The defendant visited the salvage yard on Friday, October 16, and Monday, October 19 on a pass. On Saturday he could have visited without a pass, if accompanied by Smith. He made no recorded purchases any day that month. A month later unmutilated carbine receivers identifiable by serial number, and also by the labels on the boxes, as having been in Smith's custody October 15 were in the possession of one Numrich, a second-hand gun and parts dealer in New York. Numrich had never been seen at the Armory. A photostat of a check, Numrich to Bready, and endorsed by Bready, in the amount of $400, dated October 20, 1953, was introduced without objection.

According to defendant's extra-judicial statements given various government officials, including a lengthy examination by an assistant United States Attorney after repeated instructions as to defendant's rights, defendant admitted that on October 17 he paid Smith $500 to obtain these receivers, and sold them to Numrich for $2,400, $400 by check, the balance cash. There is no direct corroborative evidence of an actual payment to Smith outside of whatever inference is warranted from the above.

█ The law applicable to this situation is clear. Its application is less so. The defendant may be convicted on his extra-judicial admissions provided that there is enough independent evidence, as to each element of the offense which is to be proved by the admissions, to indicate the trustworthiness of the admissions. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192. It is not necessary, as defendant contends, for the outside evidence to show the crime independently. If that were so it would be a case of the admission corroborating the independent evidence, not vice versa.

In Opper v. United States defendant was charged with bribing a public official to approve certain goggles he was selling the government. It was established that the official had effected the acceptance after the goggles had previously been rejected. It remained to be shown that defendant had paid the official therefor, i. e., had made a payment with a wrongful intent. In an extra-judicial statement he admitted making a payment, but said it was for an independent, personal, and proper purpose. The court held that the statement was sufficiently corroborated to warrant a finding of payment, and that such a finding, coupled with evidence of the official's conduct, warranted the conclusion that the payment was for an improper purpose. The corroborating evidence to which the court referred was as follows. Statement: Pursuant to a telephone call, the official came from Dayton to my office in Chicago and I paid him $1,000 (for a purpose unconnected with the goggles) and I cashed a check on myself to reimburse myself. Independent evidence: Official, after a telephone call to defendant's home, flew from Dayton to Chicago on date stated, and defendant cashed a check on himself for $1,000. The connecting step of payment was missing, but the court held there was enough present to indicate the "trustworthiness" of the extra-judicial statement.

█ In the case at bar, while there was no direct evidence of a payment to Smith, defendant, as in Opper, was shown to have contact with the official and available funds in the manner outlined in his statement, and his acquisition from Smith's custody by bribery, while not the only inference, is, as in Opper, a reasonable inference consistent with the statement. Indeed, in some ways the case is stronger than Opper, because I can think of no legitimate explanation as to how Bready could have obtained possession of the government property. I hold that the trustworthiness of the statement was sufficiently shown.

Defendant's other reasons for acquittal do not require discussion.