UNITED STATES of America

v.

Abraham CHAIFETZ.

Crim. No. 118–59.

United States District Court
D. Columbia.

Feb. 12, 1960.

58

Frederick G. Smithson, Asst. U. S. Atty., Washington, D. C., for the Government.

Albert J. Ahern, Jr., James J. Laughlin, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Abraham Chaifetz, an attorney, resident of the District of Columbia, was indicted for income tax evasion by the grand jury for the District of Maryland on January 7, 1958.[1] The indictment contained five counts, covering the five-year period of January 1, 1951 through December 31, 1955 and charged that Chaifetz had willfully attempted to evade income tax by failing to report net income totalling $43,167.31 and, therefore, federal income taxes of $13,175.84.[2] After a trial which took more than a month, the defendant was found guilty by the jury of the felony charged in the third count,[3] and of the misdemeanor included within the fourth count.[4] The jury acquitted on the first, second and fifth counts.

The defendant has now moved for judgment of acquittal and, alternatively, for a new trial.

The defendant contends that there was insufficient evidence upon which the jury could have based its verdicts of guilty on the third and fourth counts. The argument runs: this was a net

1. On February 3, 1959, upon the defendant's motion, Judge Watkins ordered the case transferred to this Court. See 18 U.S.C. § 3237(b). The records were filed here on February 6, 1959.

2. The breakdown in the indictment is as follows:

| | income reported | actual income | tax reported | actual tax due |
|---|---|---|---|---|
| count 1 (1951) | $ 4,259.34 | $18,027.51 | $ 510.89 | $ 5,412.03 |
| count 2 (1952) | 1,954.16 | 8,052.91 | 34.22 | 1,601.99 |
| count 3 (1953) | 2,019.50 | 13,299.47 | 48.73 | 3,585.78 |
| count 4 (1954) | 3,760.89 | 11,801.86 | 376.35 | 2,624.88 |
| count 5 (1955) | 3,244.79 | 7,224.24 | 250.09 | 1,171.44 |
| | $15,238.68 | $58,405.99 | $1,220.28 | $14,396.12 |

3. 26 U.S.C. § 145(b) (1939 Internal Revenue Code).

4. Failing to supply information required by law, 26 U.S.C. § 7203 (1954 Internal Revenue Code).

worth prosecution;[5] the jury acquitted the defendant on the first count which covered the "base year"; since the Government did not prove its contentions regarding the base year, as is evidenced by the jury's verdict, all succeeding years —bottomed as they are on the closing net worth of the preceding year—must fall.

■ The argument must be rejected. There was sufficient evidence in this case for the jury to have found the defendant guilty on each of the felony counts. The jury was not compelled to find the defendant guilty on count one in order to find him guilty on any of the succeeding counts. The jury was carefully instructed that willfulness is an essential element in the charge of tax evasion.[6] Quite conceivably, the jury was convinced that the Government's presentation of the defendant's net worth during 1951, 1952 and 1953 was correct; was not convinced that the defendant had acted willfully with regard to 1951 and 1952, but was convinced of the defendant's willfulness with regard to his 1953 return. Therefore, the jury acquitted the defendant on counts 1 (1951) and 2 (1952) and found him guilty on count 3 (1953). This hypothesis is especially plausible when one considers that the Government showed the greatest number of specific omissions from income on the 1953 return.

■ Moreover, even if it is assumed that the jury's verdicts on the counts were inconsistent, the short answer to the defendant's contention is simply that there is no requirement for consistency.[7]

■ It has also been argued that the Court should have submitted the misdemeanor charge on the first three counts, as well as the last two, even though, as to the first three counts, the statute of limitations had run on the misdemeanor charges.[8] Defendant's motions papers read:

"The reasoning of the Court that because the statute of limitations

**5.** The Supreme Court has explained this method of prosecution as follows:

"In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. In addition, it asks the jury to infer willfulness from this understatement, when taken in connection with direct evidence of 'conduct, the likely effect of which would be to mislead or to conceal.' Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418." Clark, J. in Holland v. United States, 1954, 348 U.S. 121, at page 125, 75 S.Ct. 127, at page 130, 99 L.Ed. 150.

And see United States v. O'Connor, 2 Cir., 1956, 237 F.2d 466, 472–474.

**6.** Stated at several different times during the charge. Defined at p. 2844 as: "An act * * * done voluntarily and purposely and with a specific intent to do that which the law forbids. It must be done with bad faith and evil motive."

**7.** Silverman v. United States, D.C.Cir., 275 F.2d 173, at page 176, citing United States v. Daigle, D.C.D.C., 149 F.Supp. 409, affirmed 1957, 101 U.S.App.D.C. 286, 248 F.2d 608, certiorari denied 1958, 355 U.S. 913, 78 S.Ct. 344, 2 L.Ed.2d 274:

"Where inconsistent verdicts of conviction and acquittal are returned, it has been said: 'While the verdict as to each count must be consistent in itself, the verdicts on the several counts need not be consistent with each other. The question * * * is not whether the verdict of guilty * * * is consistent with the verdict of acquittal on the other counts. It is whether it is consistent with the evidence, that is whether the evidence supports the verdict, and this is true even though the inconsistency can be explained upon no rational considerations.'" 149 F.Supp. at pages 413–414.

**8.** 26 U.S.C. § 3748 (1939 Internal Revenue Code).

had run it thus barred the submission of the lesser offense to the jury in effect deprived the jury of convicting the defendant of the misdemeanor for the year 1953 if in fact they believed he only committed a misdemeanor."

But if the jury believed the defendant "only committed a misdemeanor" it would have found the defendant not guilty of the felony charge for 1953. This it did not do. The defendant's contention, if accepted, would result in giving the jury a patent and unlawful invitation to compromise. It needs hardly be added that no persuasive authority was cited to support this novel proposition. Furthermore, counsel for the defendant conceded during the trial that it would be improper.[9]

■ Defendant also argues that the Court's ruling, limiting the number of character witnesses to four, prejudiced the defendant by causing the jury to believe the defense could not make good on its statement during voir dire that certain judges would be called on behalf of the defendant,[10] whereas, actually the judges could not be called because of the Court's ruling. Here, too, during the trial, counsel for the defendant agreed with the Court's ruling.[11] Aside from this, it readily can be seen from an examination of the transcript that the failure to call Judge Letts, or any other judge, rested entirely with the defense.[12] It knew of the limitation to four before any of the character witnesses were called. All the discussion regarding "prejudice" centered around the "inability" to call Judge Letts. Yet the defense named three judges during voir dire and no effort appears to have been made to call either of the other two. Even assuming, therefore, that the jury could remember what had been said on voir dire (one month earlier), no explanation was proffered at any time regarding the absence of these two judges. Under the circumstances, it remains the opinion of the Court that four character witnesses was a sufficient number for the defendant to establish his reputation without becoming oppressive.[13]

■ The defendant also contends that the Court erred in its instructions

9. Tr. pp. 2758–59:
"The Court: Let me ask you this for the record. Do you concede that as far as this misdemeanor charge under 7203 that the statute of limitations has run on the first three years?
"Mr. Ahern: Yes.
"The Court: So that it could not possibly be any lesser offense under the first three years?
"Mr. Ahern: *That's right.*
"The Court: It could only be a lesser offense on '54 and '55 on 7203, and on the specific phase of 7203 in willfully failing to supply information, isn't that right?
"Mr. Ahern: Yes."

10. Tr. p. 16:
"Mr. Laughlin: * * * There will also be called a number of character witnesses. Included in those character witnesses, we are advised by Mr. Chaifetz, will be Judge Letts, a Judge of this court; Judge Munter of the Domestic Relations Court; and Judge Scalley of Municipal Court. * * *"

11. Tr. pp. 2503–04:
"The Court: How many [character witnesses] are you going to have?

"Mr. Ahern: Maybe—well, we put in calls for a great number but suppose, your Honor, if we get five would that be—
"The Court: Yes. Well, it shouldn't be over five.
"Mr. Smithson: I don't see why five. It seems to me five is a great number but that is up to your Honor.
"The Court: Well, of course, one of the things the court points out in these opinions is that the Court should limit the number so it doesn't become the trial of an issue of reputation rather than the particular charge.
"Why don't you limit it to four?
"Mr. Laughlin: *All right.*
"The Court: I will say four.
"Mr. Laughlin: All right, your Honor."

12. Tr. pp. 2527–31.

13. See Burgman v. United States, 1951, 88 U.S.App.D.C. 184, 188–189, 188 F. 2d 637, 641–642, certiorari denied 1951, 342 U.S. 838, 72 S.Ct. 64, 96 L.Ed. 1347; United States v. Baysek, 3 Cir., 1954, 212 F.2d 446, 447, certiorari denied 1954, 348 U.S. 836, 75 S.Ct. 49, 99 L.Ed. 659; Hauge v. United States, 9 Cir., 1921, 276 F. 111.

regarding the obligation of the Government to check into leads or plausible explanations concerning the defendant's financial history (tr. pp. 2866–67); and in its instructions regarding the use, by the Government, of fraud, misrepresentation, or deceit to obtain records from the defendant (tr. pp. 2869–70). The Court has reviewed its charge and is of the opinion that it is correct under the authorities. See, e. g., Holland v. United States, 1954, 348 U.S. 121, 135–136, 75 S.Ct. 127, 99 L.Ed. 150; Smith v. United States, 1954, 348 U.S. 147, 150–151, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Frank, 3 Cir., 1957, 245 F.2d 284, 285–286, certiorari denied 1957, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed.2d 35.

The Court has carefully considered the remaining contentions of the defendant and finds them to be without merit.

Accordingly, the motion for judgment of acquittal and the motion for a new trial are denied.