UNITED STATES, Appellee,

v.

Specialist Four Jeffrey L. DAKE, SSN 530–68–1558, United States Army, Appellant.

CM 440143.

U. S. Army Court of Military Review.

20 Nov. 1981.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Charles A. Byler, JAGC, and Captain Paul J. Moriarty, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Major Robert B. Williams, JAGC, and Captain Lawrence W. Fitting, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

This case has been referred to the Court pursuant to the provisions of Article 69, Uniform Code of Military Justice, 10 U.S.C. § 869 (1976). The issue that caused it to be referred, which now has been briefed by counsel for the parties, is whether the appellant's confession to a criminal conspiracy should have been excluded from evidence for lack of sufficient corroboration.

The members of a general court-martial convicted appellant, who was stationed in Korea, of violating an Eighth Army general regulation in October 1979 by using the military postal system for commercial or business purposes, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1976). In addition, they found him guilty of violating Article 81 of the Code, 10 U.S.C. § 881 (1976) by conspiring with one Sergeant Hickel to commit the substantive offense (violating the regulation by using the postal system for commercial or business purposes). The court members im-

posed, and the convening authority approved, a sentence to reduction to the grade of Private E–1, confinement at hard labor for four months, and forfeiture of all pay and allowances for four months.

The cornerstone of the Government's evidence of the conspiracy was a written statement, amounting to a confession, made by the appellant to a special agent of the Army's Criminal Investigation Command in November 1979. There is no question as to the voluntariness of the confession. The confession (with typographical errors unchanged) stated as follows:

During the first week in Oct 79, HICKEL came to me and said that he had heard that I was going to take in country leav and wanted me to take leave to Japan and make some purchases for him. I at first did not agree but after he asked several times we made a deal. I signed out on leave on 22 Oct 79 and met HICKEL lated that day. HICKEL gave me a phony set of leave papers from Ft ORD, CA, and $15000.00 plus another ninety dollars for misc. expances. He also gave me a paper listing the people that I was to send the items I purchased in Japan for him. All the people I was to send the stuff to were members of the unit. I understood that he had made arrangements with to recieve the boxes. When he handed me the list of names he stated "Here is the list of people I asked to recieve the boxes. He also provided the name of a Japaneese who worked in the Pony Store in Japan who I was to ask for. When I got to JAPAN and the store I asked for this fellow, I Can't recall him name, and when he came up to me I got the impression that I was expected. This fellow took me downstairs and we had coffee. I gave him the list and he took it to get the items togather. I purchased eight VTR, eight color TV, and four each amplifiers and tuners. This came back a while later and I paid him for the merchandise. We then went up stairs and they were already wrapping the stuff. I left and returne the next day and began making trips to the APO to mail the stuff

back to the guys in my unit. It took a total of five trips. When I came back to Korea I still had about $700.00 left and that was mine to keep plus I was supposed to get another $30.00 per boxx when they came in. I met with HICKEL on the 25th the day after I got back. I gave him all the receipts for the stuff and the mail reciepts and asked about the money. He said that when the boxes came in he would pay me  Some time later HICKEL told me that the boxes had been held at KIMPO and that I should just be kool.[1]

By way of corroborating this confession, the Government introduced evidence that Republic of Korea customs authorities at the Seoul, Korea, Aerial Mail Terminal (a United States military facility) had on 27 October 1979 impounded some twenty packages bearing the return address "SP4 JEFFREY L. DAKE HHC 2/32nd INF Ft Ord CA 93941." The packages were addressed to eight members of the 595th Maintenance Company. Eight of them, one addressed to each of the eight members, contained Sony Model 8600 videotape recorders; another eight, similarly addressed, contained Sony color television sets; the remaining four packages, to four of the eight members, contained both a Marantz amplifier and Marantz tuner. Photographs of the contents reveal merchandise appearing to be in new condition. Photographs of the wrappings indicate that the packages were mailed on 23 October 1979 via the Air Force Postal System from APO 96328. Values declared incident to registering the parcels

were $690.00 per videotape recorder, $440.00 per television set, and $520.00 for each amplifier-tuner pair, the total of which is $11,120.00.

There was also independent evidence, by way of judicial notice, that Eighth Army regulations prohibited use of the postal system for commercial or business purposes.

We regard this independent evidence as sufficiently corroborative of appellant's confession that he used the postal facilities for personal profit in the business sense; nor has it been contended otherwise. Also, this evidence corroborates appellant's confession as it relates to certain of the overt acts alleged.[2] The question we must resolve, however, is whether the confession was improperly used as evidence against the appellant on the charge of conspiracy because only the confession and none of the independent evidence indicated the existence of an agreement between appellant and Sergeant Hickel.[3]

The elements of the offense of conspiracy in violation of Article 81 are—

(a) That the accused and one or more persons named or described entered into an agreement; (b) that the object of the agreement was to commit an offense under the code; and (c) that one or more of the persons named or described performed an act to effect the object of the conspiracy, as alleged.

Manual for Courts-Martial, United States, 1969 (Revised edition), par. 160 at p. 28–9.

---

1. In the same specification, appellant was charged with also conspiring with Hickel in May, June, and August 1979. Before this confession was admitted into evidence, information as to these earlier conspiracies with Hickel and overt acts in pursuance thereof were excised for lack of corroborative evidence. By excepting some allegations in the specification, the court members found appellant guilty of conspiring with Hickel only in October 1979.

2. The overt acts alleged as having been accomplished to effect the object of the conspiracy were that—

   [T]he said Dake did, in October 1979, agree with the said Hickel to travel to Japan, did meet with Hickel, did receive $15,000 from Hickel, did travel to Japan, did purchase

eight video tape recorders, eight televisions, four amplifiers, and four tuners, did mail said goods to individuals whose names had been supplied to Dake by Hickel, and did receive approximately $700 for his services. . . .
Specification, Charge I.

3. The issue was raised at the trial. The military judge appears to have considered that independent evidence that the packages had been impounded corroborated appellant's statement that Hickel informed him of this, thereby indicating an interest by Hickel in the packages, which is consistent with the existence of an agreement between them. As we shall see, however, the only evidence that Hickel knew of the impoundment was in appellant's statement.

"It is a general rule that a confession or admission of the accused cannot be considered as evidence against him on the question of guilt or innocence unless independent evidence, either direct or circumstantial, has been introduced which corroborates the essential facts admitted sufficiently to justify an inference of their truth." Manual for Courts-Martial, United States, 1969 (Revised edition), par. 140a(5).[4] Further, the same paragraph provides—

If the independent evidence raises an inference of the truth of some, but not all, of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission which are so corroborated by the independent evidence. . . .

*Id.*[5]

The rule set forth in the Manual was adopted in 1969 to reflect—

[T]he new rule pertaining to corroboration of confessions and admissions adopted by the Supreme Court in *Opper v. United States*, 348 U.S. 84, [75 S.Ct. 158, 99 L.Ed. 101] (1954), and *Smith v. United States*, 348 U.S. 147 [75 S.Ct. 194, 99 L.Ed. 192] (1954). The *Opper* case is authority for the proposition that the corroborating evidence need only raise a 'jury inference' of the truth of the essential facts admitted, and the *Smith* case is authority for the principle that if the prosecution desires to use the accused's statement as evidence to establish a particular essential fact, that essential fact must be corroborated by independent evidence.

Department of the Army Pamphlet 27–2, Analysis of Contents: Manual for Courts-Martial, United States, 1969, Revised Edition, pp. 27–9, 27–10 (1970).

In particular, the *Smith* opinion stated as follows:

There has been considerable debate concerning the quantum of corroboration necessary to substantiate the existence of the crime charged. It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty. . . . In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone . . . and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged. . . . We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused.

*Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954) (citations omitted). Elsewhere, the court likewise stated "[W]here a fact is sufficiently important that the Government adduces extrajudicial statements of the accused bearing on its existence, and then relies on its existence to sustain the defendant's conviction, there is need for corroboration." *Id.* at 157 n.4, 75 S.Ct. at 200 n.4.

As we have indicated, to convict appellant of conspiracy, it was necessary to prove that he entered into an agreement with Sergeant Hickel. However, apart from the appellant's statement, the Government produced no evidence, direct or circumstantial, that there was any agreement between the

---

4. As to the purpose of this rule, see *Smith v. United States*, 348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954).

5. On 1 September 1980, the chapter containing this paragraph was superseded by the Military Rules of Evidence. Rule 304(g) is substantially identical to the matter quoted above.

two. Establishing that appellant mailed, presumably from Japan, using a false return address, a large quantity of valuable duty-free merchandise to members of the same company to which Hickel and the appellant were assigned [6], none of whom testified, falls short of fortifying the truth of appellant's statement that there was an agreement *with Hickel* to do so. Even Hickel's apparent concern with the impoundment of the property was evident only from appellant's statement and not from any independent evidence. In summary, there was neither independent evidence nor corroborated admission of an agreement with Hickel. There being insufficient evidence of a conspiracy otherwise, that finding must be disapproved.

The findings of guilty of Charge I and its Specification are set aside and the charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms the sentence.

Judge CLAUSE and Judge COHEN concur.

---

**6.** Hickel's assignment was not made a matter of evidence, but is indicated on the first page of the original charge sheet. Prosecution Exhibit 69 discloses that appellant was assigned to the same unit.