# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 21, 2010 Session

## STATE OF TENNESSEE v. ANDREW DOUGLAS RUSH

### Appeal from the Circuit Court for Coffee County
### No. 36, 428    Charles Lee, Judge

---

### No. M2009-02253-CCA-R3-CD - Filed November 29, 2010

---

The Defendant, Andrew Douglas Rush, was convicted of rape of a child, a Class A felony, and statutory rape, a Class E felony. See Tenn. Code Ann. §§ 39-13-506(d)(2), -522(b)(1). In this direct appeal, he contends that: (1) the State presented insufficient evidence to convict him of either count; and (2) the trial court erred by failing to instruct the jury that attempted child rape was a lesser-included offense of rape of a child. After our review, we affirm the Defendant's convictions. We remand solely for the entry of a corrected judgment form, reflecting that a conviction of rape of a child requires that the Defendant serve 100% of the sentence imposed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Remanded

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Kevin R. Askren, Assistant Public Defender, Tullahoma, Tennessee, for the appellant, Andrew Douglas Rush.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Mickey Layne, District Attorney General; and Jason Ponder, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

This appeal arises from accusations that the Defendant engaged in sexual activity with two sisters, one eleven years old and one fourteen years old, in November 2007. In April 2008, a Coffee County grand jury returned an indictment alleging that the Defendant committed the offenses of rape of a child and statutory rape.[1] The Defendant's jury trial was conducted on May 18-19, 2009.

T.P., thirteen years old at the time of trial, testified that when she was eleven years old, her family lived in a trailer park in Manchester. She said that her mother worked as a nurse and, when she worked the evening shift, T.P. and her four sisters would be alone from the time they came home from school until approximately 1:00 a.m., when their mother returned from work. T.P. said that she was supposed to come straight home, do her homework, cook supper, take a bath, and get ready for bed. However, T.P. did not do what her mother instructed and, instead, played "outside and goofed off" with Justin, a boy who lived next door. She also testified that she saw the Defendant,[2] who also lived next door, every day and that they "would goof off and watch movies." T.P. recalled that, although she did originally tell the Defendant she was sixteen years old, she admitted to him that she was only eleven years old before the incident in question occurred.

T.P. testified that, on the evening in question, she played with Justin after school. She recalled that the Defendant came over around 5:00 p.m., and that they "goofed off" outside. She said that they later went inside and, when they saw the headlights of an approaching car, the Defendant and Justin ran out the back door because they correctly suspected that it was T.P.'s aunt coming to check on the children and the Defendant and Justin "weren't supposed to be there." T.P. testified that after her aunt left, the Defendant came back over to their trailer. She stated that she, the Defendant, and her older sister P.P., all laid down on her mother's bed and began kissing. She testified that this was not the first time she kissed the Defendant.

She recalled that they stopped kissing and that the Defendant and P.P. went into the bathroom. T.P. said that, later, the Defendant called her into the bathroom and P.P. stepped out into the hallway. T.P. described what occurred once she went into the bathroom with the

---

[1] The indictment specified that the rape of a child count referred to victim T.P. and that the statutory rape count regarded victim P.P.

[2] T.P. testified that the Defendant told her that he was twenty-four years old. However, at the time of the incident, the Defendant was actually twenty years old.

Defendant: "We started kissing. I pulled down my pants, and he stuck his penis in me, and we kept on kissing. And then I jerked away. And I said, ouch, that hurts, and he stopped. And then he started licking my vagina and I started sucking his penis." She also testified, "And then after that was done, I went out of the bathroom and took a shower because I had blood all over my pants." She testified that she threw her pants out because they had blood all over them. T.P. also recalled that, after she got out of the shower, P.P. and the Defendant were alone together in the back bedroom for two hours and that the Defendant left around 1:00 a.m. She said that she did not tell her mother what happened when her mother came home. T.P. also acknowledged that she was angry at P.P. "[b]ecause she had sex with [the Defendant] after I did."

T.P. testified that, about two weeks after the incident, she wrote a note to her cousin telling her about her activities with the Defendant. She recalled that her cousin showed the note to her mother, who called the police. T.P. stated that, after the night in question, she next saw the Defendant at her aunt's trailer and that the Defendant told her not to tell anybody what happened between them. Regarding the time frame of the incident, T.P. testified that her family's trailer caught fire on December 1, 2007, and that her sexual encounter with the Defendant occurred about two to three days before the fire.

P.P., fifteen years old at the time of trial, testified that when her mother was at work, she was in charge of the household. She said that, when her and her sisters got home from school, they were supposed to eat their snack, do their homework, have dinner, take baths, and go to bed. However, she admitted that she did not do what her mother instructed and, instead, played video games and played outside with Justin and the Defendant. She said that, if her aunt came by to check on the girls while the boys were over, the boys would either leave or hide because they were not supposed to be there.

P.P. recalled that Justin and the Defendant came over after the girls got home from school on the day in question. She said that they left around 5:00 p.m. and that the Defendant returned around 8:00 p.m. P.P. testified that, when the Defendant came over, both she and T.P. began kissing the Defendant while they were standing in the living room. Then, she said that the Defendant asked to speak to her in the other room, and that they went into the bathroom. She testified that she sat on the counter, that the Defendant and her began to kiss, and that he then inserted his finger into her vagina. She explained that she pushed the Defendant away when her sister walked toward them because she did not want her sister to see what was going on. P.P. recalled that she then went to check on her four-year-old sister, who had started to cry.

She testified that, when she was finished attending to her little sister, she went back toward the bathroom and witnessed the Defendant performing oral sex on T.P. She described

that her sister "was sitting on the counter and he was on his knees in front of her." She said she walked away and recalled that T.P. came out about ten minutes later and "went straight to the shower" in the other bathroom. P.P. testified that the Defendant asked if he could stay over longer, but that she told him to leave. She denied that she spent any more time with the Defendant that evening, as T.P. alleged.

On cross-examination, P.P. said that, at the time of the alleged incident, she had crushes on both Justin and the Defendant. She admitted that, when she spoke with the police and investigators after T.P. made her allegations, she denied that anything happened between her and the Defendant. She also admitted that she previously denied seeing any sexual activity between T.P. and the Defendant. She acknowledged that she had "plenty" of opportunities to tell the authorities the truth but did not. When asked why she had not revealed what happened between her and the Defendant sooner, she replied, "Because I didn't want anybody thinking different of me. I was scared."

The victims' mother testified that there had been some complications during T.P.'s birth and, as a result, "[T.P.] has the capability of about a first or second grader." However, regarding the allegations against the Defendant, she said, "[T.P.'s] telling the same story she told since it first started. She doesn't seem like she had any confusion whatsoever." The victims' mother also testified that T.P. "has a very good memory."

Investigator William Marcum, employed by the Coffee County Sheriff's Department, testified that he received a call on December 8, 2007, about a child claiming that she had been raped several days before. He said that, on the same day, he conducted an interview with the Defendant. He recalled that the Defendant told him that "he didn't do anything to that girl or any other girl." He gave a statement that indicated that, on the night in question, he got in a fight with his fiancé and went for a long bike ride.

On January 10, 2008, the Defendant came to the police station for a second interview, this time meeting with Special Agent Danny Faye from the Tennessee Bureau of Investigation (TBI), in addition to Investigator Marcum, and gave a new statement. Investigator Marcum explained that the Defendant spoke with Special Agent Faye first, and then Agent Faye brought the Defendant to Investigator Marcum, so that he could write out what the Defendant said. Investigator Marcum said the statement was "his words in my handwriting," and that the Defendant signed the statement. In the statement, the Defendant admitted, "I stuck my bird finger in both of them up to the first knuckle."

Special Agent Faye testified that, after he read the Defendant his Miranda[3] rights, the Defendant signed a waiver form and that the two men spoke about T.P.'s allegations. Special Agent Faye recalled that the Defendant was at the police station for approximately three hours. He said that, at first, the Defendant said he had not had sexual contact with the victims. However, "[d]uring the course of the interview his story began to change." Special Agent Faye testified that the Defendant "proceeded to tell me that he had stuck his finger inside her vagina." Special Agent Faye recalled that he traced the Defendant's hand on a piece of paper and asked the Defendant to indicate how far he inserted his finger into the victim's vagina. The Defendant drew a line on the middle finger, below the fingernail. Special Agent Faye testified that he informed Investigator Marcum that the Defendant "had stated that he had not had sex with [T.P.], that he did not put his mouth on her vagina, he didn't put his penis in her vagina, but he admitted to me that he did, in fact, stick his middle finger inside her vagina."

On May 19, 2009, the jury returned guilty verdicts on both counts. At the Defendant's sentencing hearing, the State and the Defendant announced to the court that they had agreed that the Defendant's sentence for rape of a child would be twenty-five years[4] and that his sentence for statutory rape would be a concurrent term of two years. The trial court agreed to the twenty-five-year effective sentence proposed by the parties. Judgment forms entered on March 16, 2010, reflect that, for the rape of a child conviction, the Defendant was sentenced as a Range I, standard offender to twenty-five years at 30%, and, for the statutory rape conviction, the Defendant was sentenced as a Range I standard offender to two years at 30%. The trial court ordered that the Defendant's statutory rape sentence run concurrently with his sentence for rape of a child. He now appeals.

**Analysis**

On appeal, the Defendant raises the following issues: (1) the State presented insufficient evidence to convict him of rape of a child and statutory rape; and (2) the trial court erred by failing to instruct the jury that attempted child rape was a lesser-included offense of rape of a child.

**I. Sufficiency**

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is

---

[3] See Miranda v. Arizona, 384 U.S. 436, 479 (1966).

[4] Twenty-five years is the minimum sentence set by the legislature for a conviction for Rape of a Child. See Tenn. Code Ann. § 39-13-523(b)(2)(A).

insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

### A. Rape of a Child

Tennessee Code Annotated section 39-13-522(a) provides, "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

T.P., the victim specified in the rape of a child count, testified that the Defendant penetrated her with his penis and that he also performed oral sex on her. She did not testify to any instances of digital penetration. In his statement, however, the Defendant admitted only that he digitally penetrated both victims. The State elected to ask the jury to deliberate regarding rape of a child through digital penetration. In the State's closing argument, the prosecutor told the jury as follows:

Now, [T.P.], the strength of her testimony was on the penile penetration. And you remember that. She talked about him inserting his penis inside of her and how it hurt and she bled. [P.P.] described [T.P.'s] oral sex, if you recall. And, the [D]efendant confessed to inserting his finger into [T.P.]. So we have evidence of three penetrations. To make it simple, I'll ask that you only convict the [D]efendant on what he admitted to, his finger.

The Defendant contends that there was no evidence corroborating his admission that he digitally penetrated T.P. and, therefore, the State presented insufficient evidence to convict him. The State argues that the victim's testimony regarding penile and oral penetration is circumstantial evidence that can be used to corroborate the Defendant's statement.

"It is a well-established principle of law in this state that a conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti." State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000); see also State v. Ellis, 89 S.W.3d 584, 600 (Tenn. Crim. App. 2000) ("In order to establish the corpus delicti of a crime, the State must establish beyond a reasonable doubt (1) that a certain result has been produced and (2) that some person is criminally responsible for the act."). However, "only slight evidence of the corpus delicti is necessary to corroborate a confession and sustain a conviction." State v. Driver, 634 S.W.2d 601, 606 (Tenn. Crim. App. 1981); see also Smith, 24 S.W.3d at 282 (noting that there is a "relatively low threshold required to corroborate a confession"). In fact, "corroboration of the corpus delicti may be achieved with circumstantial evidence alone." State v. Housler, 193 S.W.3d 476, 490 (Tenn. 2006). In Rickets v. State, our supreme court explained that

> evidence is sufficient if of itself it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Thus when we have a verdict even though founded on slight evidence of corroboration connecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.

241 S.W.2d 604, 606 (Tenn. 1951). Furthermore, the United State Supreme Court has instructed that, "[a]ll elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." Smith v. United States, 348 U.S. 147, 156 (1954).

In State v. Ellis, the defendant admitted, both in a letter to his wife and in comments to two police officers, that the nine-year-old victim performed oral sex on him. 89 S.W.3d

at 599-600.  However, in the victim's statements to a medical worker, she indicated that "she had been touched with a hand and with a private," but did not mention performing oral sex on the defendant.  Id. at 589-90.  The defendant argued "that the State failed to establish the 'corpus delicti' of the offense because the only evidence of the offense was the appellant's uncorroborated inculpatory statements."  Id. at 600.  However, this Court disagreed and held that "independent evidence that the appellant engaged in various sexual acts with [the victim] during the time period charged in the indictment corroborated his confessions to engaging in a specific act of oral intercourse with [the victim]."

We agree with the State that T.P.'s testimony about penile and oral penetration is circumstantial evidence that corroborates the Defendant's admission that he digitally penetrated her.  Although T.P. did not testify that the Defendant digitally penetrated her, her testimony about the two other methods of penetration served to bolster the Defendant's confession.  Moreover, P.P. testified that she witnessed the Defendant perform oral sex on T.P.  Thus, we find that the State presented sufficient evidence that the Defendant committed the offense of rape of a child beyond a reasonable doubt.  This issue is without merit.

### B.  Statutory Rape

The Defendant argues that the State presented insufficient evidence to convict him of statutory rape of P.P.  Specifically, he asserts that, because P.P. admitted that she had previously denied any sexual contact with the Defendant, "a jury could not have reasonabl[y] believed beyond a reasonable doubt that the offense occurred."

Tennessee Code Annotated section 39-13-506(b)(1) provides as follows:

> Statutory rape is the unlawful sexual penetration of a victim by the defendant or of the defendant by the victim when: (1) the victim is at least thirteen (13) but less than fifteen (15) years of age and the defendant is at least four (4) years but less than ten (10) years older than the victim.

As noted above, "sexual penetration" includes any "intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of the victim's . . . body."  Tenn. Code Ann. § 39-13-501(7).

The State presented proof that P.P. was fourteen years old and that the Defendant was twenty years old in November 2007.  P.P. testified that, when she went into the bathroom with the Defendant, she sat on the counter, they began to kiss, and then the Defendant inserted his finger into her vagina.  P.P. acknowledged that she had previously denied having a sexual encounter with the Defendant, but stated that her testimony at trial was the truth.  When explaining why she previously lied, she said, "Because I didn't want anybody thinking

different of me. I was scared." In addition to the victim's testimony about digital penetration, the State introduced the statement the Defendant gave to police in January 2008. In the statement, the Defendant admitted, "I stuck my bird finger in both of them up to the first knuckle." Moreover, the jury saw the drawing of a hand, on which the Defendant drew a line to indicate how far he inserted his finger when he digitally penetrated the victims. Given the victim's testimony and the Defendant's confession, we conclude that the State presented sufficient evidence for a rational trier of fact to find, beyond a reasonable doubt, that the Defendant committed statutory rape. This issue is without merit.

## II. Jury Instruction

The Defendant contends that the trial court erred in failing to instruct the jury on attempted rape of a child as a lesser-included offense of rape of a child. Tennessee Code Annotated section 40-18-110 governs jury charges as to lesser-included offenses. In relevant part, it states that "[a]bsent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." Tenn. Code Ann. § 40-18-110(c). The record in this case does not contain any request by the Defendant, written or otherwise, for an instruction on attempted rape of a child as a lesser-included offense of rape of a child.[5] We conclude that the Defendant has waived the issue.

Waiver aside, our supreme court has held that appellate courts are not precluded from reviewing this issue under the plain error doctrine. See State v. Page, 184 S.W.3d 223, 230 (Tenn. 2006). We apply a five-factor test to determine whether there is plain error:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is 'necessary to do substantial justice.'

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994).

However, we conclude that plain error analysis is not appropriate in this case because the record does not clearly establish what occurred in the trial court. Although a copy of the jury instructions prepared by the trial court is included in the technical record, the trial

___

[5] We also note that, both in his brief and during oral arguments, the Defendant stated that he did not request an instruction for attempted rape of a child. However, during the hearing for the Defendant's motion for a new trial, the State agreed to stipulate that the Defendant did not waive the jury instruction for tactical reasons.

transcript does not contain the verbal charge that was actually read to the jury. See Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."). Moreover, comments made by the prosecutor, during the hearing on the Defendant's motion for a new trial, indicate that there may have been some discussion about the inclusion of lesser-included offenses during the trial court's delivery of the jury instructions.[6] Thus, we cannot engage in a plain error analysis of whether the jury should have been instructed about attempted rape of a child because the record does not clearly establish what occurred in the trial court. This issue is without merit.

### III. Correction of Judgment Form

In its brief, the State noted, "The judgment form incorrectly has 'Standard 30%' release eligibility checked for the rape of a child conviction." After reviewing the record, we agree with the State that the release eligibility indicated on the judgment form is erroneous. The judgment form should have been marked to reflect "Child Rapist 100%." Tennessee Code Annotated section 39-13-523(b) mandates that a person convicted of a rape of a child "shall be required to serve the entire sentence imposed by the court." Moreover, for a conviction of rape of a child, the statutory minimum period of imprisonment is twenty-five years. See Tenn. Code Ann. § 39-13-522(b)(2)(A). Thus, we remand this case to the trial court, solely for entry of a corrected judgment form reflecting that the Defendant is required to serve the entire sentence imposed by the trial court.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the Defendant's convictions. We remand solely for the entry of a corrected judgment form, reflecting that a conviction for rape of a child requires that the Defendant serve 100% of the sentence imposed.

---

[6] During the hearing for the Defendant's motion for a new trial, the prosecutor said:
As to the lesser included offense instruction during the jury instructions, I have not—I have made requests and have not received the transcript in this case. [Defense counsel] has the transcript, but my understanding is the transcript does not yet include the discussions that occurred during the [c]ourt's delivery of the jury instructions. He has a copy of the actual instructions themselves, but not what was read into the record, and I seem to remember this issue coming up sometime during the reading of the instructions. . . . [M]y memory is that it was brought up, and the Court found the proof simply didn't support an attempt charge, that he either did this act or he didn't, that there was nothing leading up to the fact that would support an attempt charge.

_____
DAVID H. WELLES, JUDGE