# United States Court of Appeals
## For the First Circuit

No. 06-1853

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN STARK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Fusté,* District Judge.

Melvin Norris, with whom Richard J. Farrell, Jr. was on brief for appellant.
Michael J. Burstein, Attorney, U.S. Department of Justice, with whom Michael J. Sullivan, United States Attorney, and Jennifer Hay Zacks, Assistant United States Attorney, were on brief for appellee.

August 16, 2007

---

* Of the District of Puerto Rico, sitting by designation.

**FUSTÉ, District Judge**. Sean Stark appeals his conviction and sentence for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 (2007). For the reasons stated below, we affirm the judgment of the district court.

## I.

## Background

At approximately 12:30 p.m. on October 22, 2003, while driving from Arizona to Massachusetts in an RV, Stark and a companion, Christopher Sugar,[1] were stopped in Missouri by Deputy Sheriff Carmelo Crivello after their RV crossed the fog line and swerved onto the right shoulder. The stop was based on an alleged traffic violation of § 304.015.5 of the Missouri Code, which requires vehicles to drive within a single lane "as nearly as practicable." See Mo. Rev. Stat. § 304.015.5 (2007). During the stop, Crivello found that Stark and his companion were acting in a suspicious manner and asked if they would consent to a search of their RV. After they refused, he called a drug-sniffing dog to the scene. Crivello told the men that they could go to a nearby restaurant or hotel to wait for the canine but they chose to stay with the RV. Ten to fifteen minutes later, the canine unit arrived. After the dog alerted to the right rear of the RV, the police conducted a warrantless search of the vehicle. They found 376.9 pounds of marijuana and a gun belonging to Stark.

---

[1] The charges against Sugar were dismissed.

Stark and his companion were arrested and brought to a detention facility in the Phelps County Sheriff's Department, where Stark was interrogated by Detective Richard Hope. He confessed to the crime after he received a Miranda warning ("first confession"), and agreed to cooperate with the police in making a controlled delivery of the marijuana. A few hours later, Stark was interrogated by Agents Robert Hanson and Leslee Tate from the Drug Enforcement Administration ("DEA") in St. Louis. After Stark received another Miranda warning, he confessed to the crime a second time ("second confession"), stating that he was hired to deliver the 376.9 pounds of marijuana to Massachusetts. Stark also confirmed his desire to cooperate.

The following day, on October 23, 2002, after a third Miranda warning, Stark signed a statement of rights, as well as a prompt presentation waiver form, by which he waived his right to be immediately brought before a magistrate judge in the jurisdiction in which he was arrested. Hanson and Tate then drove Stark from St. Louis to Massachusetts. The trip took twenty-three hours, during which time Stark had a chance to rest in the RV and eat during rest stops. While he was in the RV, Stark was handcuffed with his hands in front of him, but he was de-cuffed during rest stops.

When they arrived in Massachusetts at 10:30 a.m. on October 24, 2002, DEA Agent David O'Neill took custody of Stark.

He gave Stark a fourth Miranda warning and de-cuffed him. According to Stark, O'Neill then asked him "to bring him up to speed," and had him sign a confidential source agreement. After Stark confessed to the crime a third time ("third confession"), he and O'Neill prepared for the controlled delivery of the marijuana. Stark made suggestions as to how to best carry out the plan, and helped prepare the RV. As a result of the sting operation, the government arrested three co-conspirators, Fabian Ruiz, Anibal Torres, and Trevor Teague. Stark and the others were indicted for conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846.[2]

Before trial, the district court granted Stark's motion to suppress the marijuana, finding that the initial traffic stop, the detention of Stark and his companion while they waited for the canine unit to arrive, and the search of the RV violated Stark's Fourth Amendment rights ("the unlawful search"). Although § 304.015.5 of the Missouri Code does not explain what it means to drive "as nearly as practicable" in a single lane, the district court concluded that an isolated incident of swerving was not a violation of the statute because it is common for large vehicles, such as Stark's RV, to weave into other lanes. The court also found that it was unreasonable to detain Stark and his companion

---

[2] After the return of the indictment, Stark withdrew his cooperation bid. Torres, one of his codefendants, assumed the role of cooperator and testified as a government witness against Stark.

and to search the RV because their stories were consistent, their licenses were valid, and they had no criminal histories. Accordingly, the marijuana and the gun were suppressed.

Stark also moved to suppress all three of his confessions, asserting that they, like the marijuana, were poisonous fruits of the unlawful search of the RV. The district court suppressed the first two confessions but found that Stark's third confession was admissible because it was made voluntarily and was sufficiently attenuated from the illegal search.

Subsequently, the government filed a motion in limine to clarify whether the district court's suppression order also applied to testimony relating to the illegally-seized marijuana. It sought to admit, inter alia, testimony from Torres describing how he unloaded the marijuana from Stark's RV, and testimony regarding the drug amount. The district court ruled in favor of the government, but stated that the testimony could not refer to the unlawful search and noted that it would provide the jury with limiting instructions during the trial if necessary.

On December 14, 2005, after a three-day jury trial, Stark was found guilty. He was sentenced on April 13, 2006, to a term of sixty months of imprisonment, to be followed by forty-eight months of supervised release.

## II.

## Analysis

Stark argues that the district court: (1) should have suppressed his third confession; (2) mistakenly admitted suppressed evidence at trial; (3) misled the jury in responding to a question regarding O'Neill's testimony; (4) erroneously failed to enter a judgment of acquittal; and (5) improperly found that Stark did not qualify for a safety valve sentence reduction. We address each argument in turn.

### A.    Stark's Motion To Suppress His Third Confession

"We review a district court's finding of fact for clear error, but give de novo consideration to its legal conclusions." United States v. Campa, 234 F.3d 733, 737 (1st Cir. 2000). "In determining the outcome [of a motion to suppress] under the attenuation doctrine, the court of appeals does not defer to the district court." United States v. Paradis, 351 F.3d 21, 32 (1st Cir. 2003); accord United States v. Hughes, 279 F.3d 86, 89 (1st Cir. 2002).

Stark contends that his third confession should have been suppressed as fruit of the unlawful search of his RV. However, it is well-settled that a court "need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Wong Sun v. United States, 371 U.S. 471, 487-88 (1963). A confession made

after an illegal search may be admitted if it was obtained "by means sufficiently distinguishable to be purged of the primary taint."  Id. at 488 (internal quotations omitted). To determine whether the initial taint has been removed, we must balance the following factors: (1) the voluntariness of the statement; (2) "[t]he temporal proximity" of the illegal search and the confession; (3) "the presence of intervening circumstances"; and (4) "the purpose and flagrancy of the official misconduct" ("Brown factors").  Brown v. Illinois, 422 U.S. 590, 603-04 (1975).

The district court found that the Brown factors counseled against suppressing Stark's third confession because it was made voluntarily two days after the illegal search; Stark was rested, fed, and de-cuffed; the confession was made to a new officer and in a new location; and the initial search and seizure was not an egregious violation of the Fourth Amendment.  We agree.

There are numerous indicators that Stark's third confession was voluntary, thus meeting the first of the Brown factors.  The first of these is the fact that Stark received a renewed Miranda warning before making his third confession. Dunaway v. New York, 442 U.S. 200, 217 (1979) (stating that "a confession after proper Miranda warnings may be found 'voluntary'").  In addition, Stark's proactive role in the planning of the controlled delivery demonstrated that he was "not acting from compulsion, but in the spirit of self-interest and

cooperation" in making his third confession. See United States v. Patino, 862 F.2d 128, 133-34 (7th Cir. 1988) (finding that defendant's decision to cooperate with the FBI and actively assist them with their investigation indicated that her second confession was voluntary).

The second Brown factor, temporal proximity, also counsels against suppression. Stark gave his third confession two days after the illegal search, which was arguably a sufficient amount of time for him to reflect on his predicament and determine whether he wanted to speak with an attorney before making any further statements. Compare Brown, 422 U.S. at 604-05 (stating that two hours was insufficient), with United States v. Oliver, No. 01-1108, 2001 U.S. App. LEXIS 26500, at *4-5 (10th Cir. Dec. 12, 2001) (concluding that eleven hours was sufficient); United States v. Wesela, 223 F.3d 656, 662 (7th Cir. 2000) (finding that six days was adequate). Stark counters that two days was insufficient because he was in police custody the entire time. However, this fact is not dispositive in cases where, as here, the conditions of detention were favorable, marked by rest and food. Compare Taylor v. Alabama, 457 U.S. 687, 691 (1982) (concluding that six hours was too temporally proximate because defendant was in police custody the entire time and was subjected to several interrogations, fingerprinting and a lineup); United States v. Webster, 750 F.2d 307, 313, 325 (5th Cir. 1984) (finding that ten hours was

insufficient because, inter alia, defendant was in police custody and was sleep deprived, having spent the previous night in the woods hiding from police), with Rawlings v. Kentucky, 448 U.S. 98, 107-08 (1980) (finding that forty-five minutes was sufficient because, inter alia, defendants were detained in their home and able to move around freely); Oliver, 2001 U.S. App. LEXIS 26500, at *4-5 (stating that eleven hours was adequate because, although defendant was in police custody, "he was apparently left alone by officers" during that time).

We also find that a significant intervening event took place, satisfying the third Brown factor.  Stark gave his third confession to O'Neill, a new DEA agent in a new location, and at a time when he was rested, fed, and de-cuffed.  United States v. Ayres, 725 F.2d 806, 810 (1st Cir. 1984) (finding that interrogation by a new officer in a new location when defendant was "relaxed, composed and uncoerced" sufficiently dissipated "whatever taint may have infected his prior statements").

The final Brown factor, which analyzes the purpose and flagrancy of the official misconduct, weighs against suppression as well.  This is the most important part of the analysis "because it is tied directly to the rationale underlying the exclusionary rule, deterrence of police misconduct."  United States v. Reed, 349 F.3d 457, 464-65 (7th Cir. 2003).  In analyzing this factor, courts look to see whether: (a) the police used threatening or abusive tactics;

(b) the "impropriety of the [initial misconduct] was obvious"; and (c) the initial search was a mere evidence expedition calculated to elicit a confession. Brown, 422 U.S. at 605; see also Patino, 862 F.2d at 134.

The type of misconduct that the Supreme Court has found to warrant suppression of evidence is readily distinguishable from the facts of the instant case. For example, in Brown, two detectives broke into and searched the defendant's apartment without probable cause and, upon the defendant's arrival at his apartment, pointed a gun at his head and arrested him merely for further investigation and questioning. 422 U.S. at 592, 605. Similarly, in Wong Sun, six or seven officers went to the business of a man who was thought to be a heroin dealer, forcibly opened his door, followed him into his bedroom, and almost immediately handcuffed and arrested him without probable cause. 371 U.S. at 474, 486.

The coercive tactics used by police officials in Brown and Wong Sun were certainly not at play here during the initial traffic stop, continued detention, or search of the RV. Crivello's decision to effectuate the traffic stop was also not an obvious error. Brown, 422 U.S. at 605 (suppressing evidence after finding that the "impropriety of the [initial misconduct] was obvious"). Although the district court found the stop was not justified because a single instance of swerving over the fog line did not

-10-

violate the statute, this may not have been apparent to Crivello because the statute does not define what it means to drive "as nearly as practicable" in one lane.  See Mo. Rev. Stat. § 304.015.5.  The ambiguity of this statute is further supported by the fact that several federal courts, in analyzing similarly-worded statutes, have found that an isolated instance of crossing over the fog line was sufficient to violate the statute.  See United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109-10 (8th Cir. 2007) (citing several examples of such cases).

Accordingly, we affirm the district court's refusal to suppress Stark's third confession.

B.        **Evidence Admitted At Trial**

Stark appeals the admission of O'Neill's and Torres' testimony regarding the marijuana delivery, and O'Neill's testimony regarding Stark's arrest.

Although Stark opposed the admission of these testimonies at the motion in limine hearing, he failed to properly preserve these issues for appellate review.[3]  We review unpreserved

---

[3] Stark's objections to the motion in limine should have been renewed at trial because the district court instructed Stark to do so, and because its ruling on the motion was not final and unconditional.  See Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 33 (1st Cir. 2007) (stating that a district court's ruling on a motion in limine must be final and unconditional to preserve the issue for appeal); Jenkins v. Keating, 147 F.3d 577, 581 (7th Cir. 1998) (finding that the party that unsuccessfully opposes a motion in limine must renew its objections at trial if the court invites or tells the party to do so).

challenges to a district court's evidentiary rulings for plain error pursuant to Federal Rule of Criminal Procedure 52(b). United States v. Olano, 507 U.S. 725, 733-34 (1993) (citing Fed. R. Crim. P. 52(b) (2007)). Under this standard of review, the error must be "clear or, equivalently, obvious," and it must "affect substantial rights." Id. at 734 (internal quotations omitted). To "affect substantial rights," the plain error must have been prejudicial such that it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 734, 736. The defendant bears the burden of persuasion to show prejudice. Id. at 734.

### 1. **Marijuana Testimony**

Stark challenges O'Neill's testimony stating that Stark told him that he was "employed by a Fabian Ruiz to transport what he approximated to be 350 pounds of marijuana" and Torres' testimony stating that he and others "unload[ed] marijuana into [his] trunk." Stark argues, without citing to any legal support, that these statements violated the court's suppression order because they referenced the seized marijuana.

While the exclusionary rule equally applies to verbal statements, such testimony may be admitted if it is sufficiently attenuated from the illegal search. See United States v. Ceccolini, 435 U.S. 268, 273-76 (1978). We have already determined

that O'Neill's testimony, which merely reiterated Stark's third confession, was sufficiently attenuated.

Although Stark has failed to brief this issue with regard to Torres' testimony, it is clear that Torres' statement was not prejudicial, given that it merely corroborated Stark's own confession that Torres was involved in the conspiracy. Accordingly, the district court did not commit plain error in admitting O'Neill's and Torres' statements regarding the marijuana.

### 2. **Arrest Testimony**

Similarly, the district court did not commit plain error in admitting O'Neill's testimony regarding Stark's arrest.[4] Contrary to Stark's contention, O'Neill's testimony did not reveal anything about the unlawful traffic stop or the seized marijuana. O'Neill merely stated that Stark was under arrest by the time they met, without providing any details of the circumstances of the arrest. Therefore, we find that O'Neill's mention of Stark's arrest does not rise to the level of plain error. See United States v. McIntyre, 997 F.2d 687, 696 n.5 (10th Cir. 1993) (finding that the officer's testimony regarding defendant's arrest did not violate court's order suppressing marijuana because it did not state that the marijuana was the cause of the arrest).

---

[4] O'Neill was asked "when you first met [Stark], was he under arrest?" and he responded "yes, he was."

**C.**     <u>**Jury Instruction Regarding Stark's Arrest**</u>

Stark challenges the district court's response to the jury's question asking whether they could consider testimony by O'Neill stating that "he met Stark at his arrest and Mirandized him."  The district court answered: "Yes. However, you shall not consider the evidence of the arrest in any way as proof of guilt."  A district court's decision to give a particular instruction, over a party's objection, constitutes reversible error only if the instruction was (1) "misleading, unduly complicating, or incorrect as a matter of law"; and (2) "adversely affected the objecting party's substantial rights."  <u>Faigin</u> v. <u>Kelly</u>, 184 F.3d 67, 87 (1st Cir. 1999).[5] The district court's response may have been misleading because O'Neill met Stark after his arrest, not "at" his arrest as stated in the jury's question.  However, the court's instruction does not rise to the level of reversible error because Stark has not demonstrated that it affected his substantial rights.  As such, his claim fails.

**D.**     <u>**Sufficiency of the Evidence**</u>

Stark asserts that the district court should have granted his motion for a judgment of acquittal because (1) the only testimony regarding drug weight was O'Neill's recitation of Stark's

---

[5]  We disagree with the government's contention that Stark is only entitled to plain error review on this issue because we find that Stark properly objected to the district court's instruction to the jury.

confession;[6] and (2) the government failed to prove that Stark participated in the conspiracy before he started cooperating with the government.

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. R. 29 (2007). Generally, we review de novo a district court's ruling on a Rule 29 motion.[7] United States v. Diaz, 300 F.3d 66, 77 (1st Cir. 2002). We view all of the evidence in the light most favorable to the verdict in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Carroll, 105 F.3d 740, 742 (1st Cir. 1997).

---

[6] Stark also asserts, in a perfunctory manner, that the district court failed to tell the jury to make a foreseeability determination in deciding the drug amount. See United States v. Manjarrez, 306 F.3d 1175, 1181 (1st Cir. 2002) (stating that a narcotics conspirator is only responsible for the amount of drugs that he "reasonably could have foreseen to be embraced by the conspiracy he joined"). Instead, the district court gave a more general instruction, telling the jury to find "the amount of marijuana that was involved in the conspiracy." A general instruction of this kind is permitted as long as the foreseeability determination is made by the judge, as was the case here. See United States v. Ortiz, 447 F.3d 28, 37 (1st Cir. 2006).

[7] The government asserts that Stark is not entitled to plenary review with respect to his drug weight argument because he failed to raise it in his Rule 29 motion. Because the record is unclear on this point, we will err on the side of caution and conduct a de novo review.

O'Neill's testimony regarding Stark's third confession was sufficient to support the jury's finding that the drug amount was 100 kilograms or more. Stark told O'Neill that he was hired "to transport what he approximated to be 350 pounds of marijuana," an amount that equals 159.1 kilograms. Although Stark correctly asserts that "[t]he general rule [is] that an accused may not be convicted on his own uncorroborated confession," Smith v. United States, 348 U.S. 147, 152 (1954), drug quantity is not an element of the offense under 21 U.S.C. § 841 unless the amount of drugs is used to increase the defendant's sentence beyond the applicable maximum penalty. See United States v. Clay, 376 F.3d 1296, 1301 (1st Cir. 2004). Drug quantity was clearly not an element of the offense in Stark's case since he was sentenced to sixty months of imprisonment, which is the statutory minimum under § 841(b)(1)(B).

Similarly, we find that there was sufficient evidence to support the jury's finding that Stark participated in the conspiracy before he started cooperating with the government. Stark confessed to O'Neill his participation in a drug-trafficking conspiracy, expressly stating that he had been hired to transport marijuana to Massachusetts by a man named Fabian Ruiz, who was not a government official. Moreover, Torres corroborated this information at trial, stating that Ruiz had told him that Stark was supposed to bring the marijuana to Massachusetts. Viewing the

evidence in the light most favorable to the verdict, we affirm the district court's denial of Stark's Rule 29 motion.

**E.        Sentencing**

Stark challenges the district court's refusal to apply a safety valve reduction to his sentence.  Because the district court's determination that Stark did not qualify for the safety valve reduction rested on findings of fact, we review for clear error.  United States v. Marquez, 280 F.3d 19, 22 (1st Cir. 2002). Pursuant to this highly deferential standard, "an appellate court ought not to disturb either findings of fact or conclusions drawn therefrom unless the whole of the record compels a strong, unyielding belief that a mistake has been made."  United States v. Matos, 328 F.3d 34, 39-40 (1st Cir. 2003).

The safety valve provision of the Sentencing Reform Act, 18 U.S.C. § 3553(f) (2007), allows a district court to sentence a first-time offender below the mandatory minimum if, inter alia, "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense."  Id. § 3553(f); see also U.S.S.G. § 5C1.2 (2007).  The defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to relief under the safety valve provision.  United States v. Miranda-Santiago, 96 F.3d 517, 529 n.25 (1st Cir. 1996).

The district court determined that Stark was not eligible for a safety valve reduction after finding, by a preponderance of

the evidence, that the gun in Stark's possession was connected to his drug trafficking activity. The court reasonably inferred that Stark brought the gun to protect himself and the large quantity of drugs that he was transporting in his RV. Because Stark failed to prove otherwise, the district court's findings were not clearly erroneous.

Alternatively, Stark asserts that the gun was suppressed evidence and, therefore, should not have been taken into account during sentencing. Although he concedes that suppressed evidence may generally be considered at sentencing, he argues that the district court should have nonetheless excluded evidence of the gun because the police misconduct in this case was egregious. see United States v. Acosta, 303 F.3d 78, 86 (1st Cir. 2002) ("[W]e hold that the exclusionary rule does not bar the use of evidence seized in violation of a defendant's Fourth Amendment rights in sentencing. We leave open the question of whether the exclusionary rule would bar the use of evidence when police intentionally act in violation of the Fourth Amendment in order to increase a defendant's sentence." (footnote omitted)). We need not decide whether to adopt such an exception at this time, however, because Stark's argument fails. We have already established that the misconduct was not egregious. See supra section II(A). Accordingly, we affirm the district court's consideration of the gun in determining Stark's sentence.

## III.

## <u>Conclusion</u>

Based on the foregoing, Stark's conviction and sentence are **AFFIRMED.**