UNITED STATES of America,
Plaintiff–Appellee Cross–
Appellant

v.

Francisco Diaz ARTEAGA, Defendant–
Appellant Cross–Appellee.

No. 10–30320.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 2011.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

344

Camille Ann Domingue, Assistant U.S. Attorney, Daniel J. McCoy, U.S. Attorney's Office, Lafayette, LA, for Plaintiff–Appellee Cross–Appellant.

Frank Alton Granger, Lake Charles, LA, for Defendant–Appellant Cross–Appellee.

Before GARZA and DENNIS, Circuit Judges.[1]

PER CURIAM: **

The defendant, Francisco Diaz Arteaga, appeals his convictions for possession of a

---

[1]. Circuit Judge Will Garwood was originally assigned to this panel and participated in oral argument and the deliberations on this case. Judge Garwood has since passed away. Therefore, this case is being decided by a quorum. 28 U.S.C. § 46(d).

firearm by a convicted felon under 18 U.S.C. § 922(g)(1) and possession of a stolen firearm under 18 U.S.C. § 922(j). He argues that the evidence was insufficient to demonstrate, first that he possessed the firearm, as required for his convictions under § 922(g)(1) and (j), and second that he knew the firearm was stolen, as required for his conviction under § 922(j). We conclude that Arteaga preserved the former challenge, but waived the latter, and, under the resulting standards of review, we AFFIRM the convictions. Arteaga also appeals, and the Government cross-appeals, his sentence. The Government contends that the district court erred in concluding that Arteaga's prior conviction for attempted unauthorized entry of an inhabited dwelling under Louisiana law,[2] does not qualify as a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Arteaga acknowledges on appeal that he has two other violent felony convictions. We agree with the Government. Therefore we VACATE Arteaga's sentence and REMAND for re-sentencing under § 924(e). Accordingly, we do not reach Arteaga's argument challenging the district court's application of a Guidelines sentencing enhancement.

## I.

"In order to convict one for felon in possession of a firearm [under 18 U.S.C. § 922(g)], the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm." *United States v. Ferguson,* 211 F.3d 878, 885 n. 4 (5th Cir.2000) (quoting *United States v. Ybarra,* 70 F.3d 362, 365 (5th Cir.1995)) (internal quotation marks omitted). Section 922(j) makes it unlawful for any person to "receive, possess, conceal, store, barter, sell, or dispose of any stolen firearm ... which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, ... knowing or having reasonable cause to believe that the firearm ... was stolen.' " 18 U.S.C. § 922(j). Therefore, in addition to establishing possession of a firearm that moved in interstate commerce, which are also elements of a conviction under § 922(g), "[a] conviction under § 922(j) [also] requires proof that the defendant knew the firearm was stolen." *United States v. Mansolo,* 129 F.3d 749, 750 n. 2 (5th Cir.1997).

At trial, to prove both offenses, the Government demonstrated that Arteaga, an admitted convicted felon, physically possessed a Smith & Wesson revolver that its owner, Roy Allen Roberts, testified was stolen from his home on April 10, 2007, and which the Bureau of Alcohol Tobacco, Firearms and Explosives determined had traveled in interstate commerce. That firearm was recovered in the home of Ramona Sonnier, Arteaga's one time girlfriend. Sonnier testified that Arteaga stayed with her around the time that Roberts testified the revolver was stolen.

The Government introduced a statement that Arteaga gave to the police, in which he explained: "About a month to month and a half ago I met a white guy at

---

2. Louisiana Revised Statute § 14:27 defines attempt as having the "specific intent to commit a crime" and "do[ing] or omit[ting] an act for the purpose of and tending directly toward the accomplishing of his object." Section 14:27 further states that "[m]ere preparation to commit a crime shall not be sufficient to constitute an attempt." Louisiana Revised Statute § 14:62.3 defines unauthorized entry of an inhabited dwelling as "the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person."

Abraham's Tent [a local 'outreach program']. The white guy said that he had a gun for sale, so I asked him how much he wanted. He told me $150. I gave him $130 and he agreed to sell the gun for that. The gun was silver with dark colored hand grips. The gun was a revolver, but I am not familiar with sizes of guns. I put the gun under the dresser drawers in Ramona's room. Ramona did not know that I had the gun."

The detective who took this statement also testified that a revolver like the one described by Arteaga would typically retail for about $500 and that, in his opinion, if someone at Abraham's Tent offered to sell him such a firearm for $150 "it would raise a red flag."

Sonnier testified that although she and Arteaga were no longer dating at the time of the robbery or when the revolver was recovered, she continued to allow him to stay in her home, and he would sleep in her bedroom when she was at work. Consistent with this, an officer testified that on April 16, in the course of the police investigating Arteaga on other charges, Arteaga led officers back to Sonnier's home to retrieve his identification. Sonnier further testified that on April 26, she discovered a revolver under her bedroom dresser; she then called the police and had them remove the firearm.

Captain Michael Dickerson, the officer who responded to Sonnier's call, testified that he recovered a revolver from under Sonnier's bedroom dresser. Captain Dickerson also stated that the serial number on that firearm matched the serial number on the firearm reported stolen by Roberts. Likewise, Roberts earlier testified that the serial number on the recovered revolver matched that on the one he had reported stolen from his home.

Finally, the Government called Bureau of Alcohol, Tobacco, Firearms and Explosives Agent Lawrence Goldsmith, who the defense stipulated and the district court accepted as an expert on the "interstate nexus of firearms." In addition to testifying that the Smith & Wesson revolver had traveled in interstate commerce, Goldsmith stated that based on purchase records, the gun had been purchased by Roberts in Louisiana for $520, which, Goldsmith opined, represented a "fair market value for a new firearm." At the time the firearm was recovered by Captain Dickerson, Goldsmith continued, the fair market value of the firearm would have been "a little bit less" than $500, "but not by much." He also opined that if he were to be offered a Smith & Wesson revolver for $130 and the "seller had no paperwork," he would "be very wary."

In his defense, Arteaga argued that it was unclear when, and through whose hand, the revolver had entered Sonnier's home. In cross-examining Captain Dickerson, the defense highlighted that even though the police had been in Sonnier's home on April 16, to recover Arteaga's identification, they did not notice a revolver. It was not until April 26, after Arteaga had been incarcerated on other charges, that the revolver was found. On cross-examination, another detective who testified on behalf of the Government, Bradley Guidry, acknowledged that he had been part of the group of officers who accompanied Arteaga to Sonnier's home on April 16, and that they had located Arteaga's identification in Sonnier's bedroom, where the revolver was eventually found. Guidry explained that on their April 16 visit to Sonnier's home, the officers had lingered in the bedroom, searching a bag that Arteaga stated held his belongings. Nonetheless, Guidry acknowledged, the revolver was not uncovered at that point. Finally, through its cross-examination of Sonnier, the defense raised the possibility that Sonnier, one of her children, or one of their friends might have brought the firearm

into Sonnier's home. The defense did not call any witnesses.

At the close of the Government's case, the defense made an oral Rule 29 motion for judgment of acquittal. Defense counsel stated: "The question in this case—I think the overriding question that everyone is concerned with is did Mr. Arteaga possess a firearm. I mean, there's not a— I mean, whether he possessed a stolen firearm or a firearm, it really makes no difference in this particular case. Possession is the key issue because there's really no dispute about interstate nexus because it did travel in interstate commerce."

The court responded: "The fact that there's a statement by the defendant that he was in possession of the weapon is sufficient to defeat this motion, so the motion is denied." A jury convicted Arteaga of both being a felon in possession of a firearm and possessing a stolen firearm.

A probation officer prepared a pre-sentence report calculating that, without enhancing Arteaga's sentence under the ACCA, his recommended Guidelines sentencing range was 77 to 96 months of imprisonment. However, the report and addendum also stated that it would be proper to apply the ACCA sentencing enhancement under 18 U.S.C. § 924(e)(1), which requires that Arteaga have "three previous convictions ... for a violent felony or a serious drug offense." According to the report and addendum, Arteaga had three prior violent felony convictions, including convictions for (1) burglary under Connecticut law; (2) aggravated battery under Louisiana law; and (3) attempted unauthorized entry of an inhabited dwelling under Louisiana law. The report stated that if the court agreed, Arteaga would face a mandatory minimum sentence of 15 years of imprisonment and a recommended Guidelines sentencing range of 210 to 262 months of imprisonment. *See* 18 U.S.C. § 924(e)(1).

The Government did not object to the pre-sentence report, and "maintain[ed] that the Court should find that the enhanced penalties in 18 U.S.C. § 924(e) apply." It argued that each of the prior convictions listed in the report and addendum were violent felony convictions under § 924(e). Arteaga objected to the pre-sentence report's conclusion that he qualified for the ACCA sentencing enhancement.

The district court agreed with Arteaga. It concluded that Arteaga's convictions for burglary under Connecticut law and aggravated battery under Louisiana law qualified as violent felony convictions under § 924(e). Arteaga does not challenge these conclusions on appeal. However, the district court concluded that Arteaga's conviction for attempted unauthorized entry of an inhabited dwelling under Louisiana law could not "support[ ] a[n] ... armed career criminal charge," and that therefore Arteaga did not qualify for the ACCA sentencing enhancement. It did not provide further oral or written reasons explaining this decision. It ultimately sentenced Arteaga to 120 months of imprisonment.

## II.

We conclude that the evidence was sufficient to support Arteaga's convictions for both being a felon in possession of a firearm and knowingly possessing a stolen firearm. If an insufficiency-of-the-evidence claim of error is properly preserved, "[t]he denial of a motion for judgment of acquittal is reviewed *de novo*." *United States v. Ragsdale*, 426 F.3d 765, 770 (5th Cir.2005). Under that standard, "[w]e will affirm ... if a reasonable trier of fact could conclude ... that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and

drawing all reasonable inferences from the evidence to support the verdict." *Id.* at 770–71 (quoting *United States v. Floyd,* 343 F.3d 363, 370 (5th Cir.2003)) (internal quotation marks omitted). When, however, a motion for judgment of acquittal does not preserve a claim, "the standard of review is the manifest miscarriage of justice standard." *United States v. Griffin,* 324 F.3d 330, 356 (5th Cir.2003). Here too, "this Court 'must consider all the evidence, direct and circumstantial, in the light most favorable to the jury's verdict, accepting all reasonable inferences and credibility choices in favor of that verdict.'" *Id.* (quoting *United States v. Maldonado,* 735 F.2d 809, 817 (5th Cir.1984)).

"To preserve *de novo* review ... a defendant must specify at trial the particular basis on which acquittal is sought so that the Government and district court are provided notice." *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007) (citing *United States v. Phillips,* 477 F.3d 215, 219 (5th Cir.2007); *United States v. Carbajal,* 290 F.3d 277, 288–89 n. 19 (5th Cir. 2002)). Moreover, "[w]here ... a defendant asserts *specific grounds* for a specific element of a specific count for a Rule 29 motion [for judgment of acquittal], he waives all others for that specific count." *Phillips,* 477 F.3d at 219 (first alteration in original) (quoting *United States v. Herrera,* 313 F.3d 882, 884 (5th Cir.2002) (en banc)) (internal quotation marks omitted). This court looks to the defendant's motion, the Government's response, and the district court's ruling to determine what grounds were preserved below. *Id.*

■ In light of these standards, we conclude that Arteaga preserved his claim that the evidence was insufficient to establish that he possessed the revolver; however, he waived his claim that the evidence was insufficient to prove that he knew the firearm was stolen. At the close of the Government's case, the defense made a Rule 29 motion for judgment of acquittal, stating: "The question in this case—I think the overriding question that everyone is concerned with is did Mr. Arteaga possess a firearm.... I mean, whether he possessed a stolen firearm or a firearm, it really makes no difference in this particular case. Possession is the key issue...." Arteaga's attorney not only asserted that the only ground for his motion was that the Government had failed to prove Arteaga possessed the revolver, but also specifically disclaimed the argument that the evidence was insufficient to prove Arteaga knowingly possessed a stolen firearm. Without requesting a response from the Government, the district court interpreted the defense's motion similarly, stating: "The fact that there's a statement by the defendant that he was in possession of the weapon is sufficient to defeat this motion, so the motion is denied." Therefore, we examine *de novo* whether the evidence was sufficient to prove Arteaga possessed the firearm, but review only for a miscarriage of justice whether the evidence was sufficient to prove Arteaga knew the firearm was stolen.

■ "[V]iewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict," we conclude that "a reasonable trier of fact could conclude ... beyond a reasonable doubt" that Arteaga possessed the Smith & Wesson revolver. *See Ragsdale,* 426 F.3d at 770–71. The Government presented to the jury Arteaga's confession, in which he admitted to physically taking possession of the revolver at Abraham's Tent and bringing it back to Sonnier's home. "'[A]n accused may not be convicted on his own uncorroborated confession,'" but a confession can provide sufficient evidence if the Government also "introduce[s] independent evidence which would tend to establish the trustworthiness of the confession." *United States v. Deville,* 278 F.3d 500, 506 (5th

Cir.2002) (quoting *Smith v. United States*, 348 U.S. 147, 152, 75 S.Ct. 194, 99 L.Ed. 192 (1954)). Here, the Government introduced substantial evidence establishing the trustworthiness of Arteaga's confession. Both Sonnier and Captain Dickerson testified that the revolver was found under Sonnier's dresser, exactly where Arteaga confessed to having placed it. Sonnier also testified that Arteaga had access to her bedroom, allowing him to place the weapon there—a fact that was further confirmed by Guidry's testimony that Arteaga led police to Sonnier's home to recover his identification, which was located in Sonnier's bedroom. Therefore, the evidence was sufficient to establish that Arteaga possessed the revolver.

██ We also conclude that taking all the evidence in the light most favorable to the jury's verdict, Arteaga's conviction for knowingly possessing a stolen firearm does not amount to a miscarriage of justice. *See Griffin*, 324 F.3d at 356. This court has explained that the element that the defendant knew an item was stolen, "because [of its] nature, must largely be proved by circumstantial evidence." *United States v. Mitchell*, 876 F.2d 1178, 1181 (5th Cir.1989) (quoting *Johnson v. Wright*, 509 F.2d 828, 831 (5th Cir.1975)) (internal quotation marks omitted). Such circumstantial evidence can include that the defendant paid a fraction of the market rate, "10–15%," for the item, *id.*, and that the defendant could not produce a proper chain of title, *see id.* Here, two witnesses testified that a Smith & Wesson revolver similar to the one recovered from Sonnier's home would typically retail for approximately $500. The defendant confessed to purchasing it for $130, 26% of that market value. Moreover, Arteaga admitted to purchasing it from an unlicensed seller who neither claimed that he had lawfully

acquired the firearm, nor produced documentation indicating that he had lawfully purchased the firearm. And, as noted above, Arteaga's confession was corroborated by other evidence. This evidence establishes that Arteaga's conviction for knowingly possessing a stolen firearm was not a miscarriage of justice.

### III.

"We review the district court's interpretation and application of the Armed Career Criminal Act *de novo*." *United States v. Harrimon*, 568 F.3d 531, 533 (5th Cir. 2009) (citing *United States v. Helm*, 502 F.3d 366, 367 (5th Cir.2007)).

"For the purposes of the ACCA, a 'violent felony' is 'any crime punishable by imprisonment for a term exceeding one year' that: '(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.' " *Id.* (quoting 18 U.S.C. § 924(e)(2)(B)). The Government argues only that attempted unauthorized entry of an inhabited dwelling under Louisiana law qualifies as a violent felony because it falls within § 924(e)(2)(B)(ii)'s "residual clause," *viz.*, offenses that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another."

In *United States v. Claiborne*, 132 F.3d 253 (5th Cir.1998), this court held that "the offense of attempted unauthorized entry of a dwelling" under Louisiana law fell within U.S.S.G. § 4B1.2's residual clause, which defines "crimes of violence" under the Sentencing Guidelines as those that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." *Claiborne*, 132 F.3d at 255.[3] The

---

3. This court has "previously applied our hold-          ings under the residual clause of the ACCA to

*Claiborne* panel explained that attempted unauthorized entry of an inhabited dwelling was a crime of violence because unauthorized entry of an inhabited dwelling presents a similar risk to burglary, an enumerated crime of violence under § 4B1.2, as "[a] homeowner's surprise confrontation with an intruder is laced with the potential for violence, regardless of whether the intruder is a burglar or merely an unauthorized entrant." *Id.* at 256. Moreover, the *Claiborne* panel continued, the Guidelines provide that "crime[s] of violence ... include the offenses of ... attempting to commit such offenses." *Id.* (quoting U.S.S.G. § 4B1.2, n. 1) (internal quotation marks omitted).

While the instant case was pending on appeal, this court decided *United States v. O'Connor,* 632 F.3d 894 (5th Cir.2011). There, the panel held "that *Claiborne* remains good law" following the Supreme Court's intervening decisions in *Begay v. United States,* 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and *Chambers v. United States,* 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009), which interpreted § 924(e)(2)(B)(ii)'s residual clause. *O'Connor,* 632 F.3d at 898. Therefore, the *O'Connor* panel continued, unauthorized entry of an inhabited dwelling remained a crime of violence under § 4B1.2 because it is "akin to burglary," presenting as "serious [a] risk of a violent conflict." *O'Connor,* 632 F.3d at 898.

█ We held this case pending the Supreme Court's decision in *Sykes v. United States,* — U.S. ——, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011)—holding that "an Indiana statute that makes it a criminal offense whenever the driver of a vehicle knowingly or intentionally 'flees from a law enforcement officer' ... is a violent felony"

under the ACCA's residual clause, *id.* at 2270 (quoting Ind.Code § 35-44-3-3 (2004))—to determine whether it would overrule *O'Connor* or *Claiborne.* *Sykes* did not overrule either opinion. It is consistent with *O'Connor* and *Claiborne's* method of analyzing whether a crime falls within the residual clause. *Sykes* states that where "[t]he felony ... is not a strict liability, negligence, or recklessness crime"—as is the case with attempted and completed unauthorized entry of an inhabited dwelling under Louisiana law, which require intent, La.Rev.Stat. §§ 14:27, 14:62.3—if it is, "as a categorical matter, similar in risk to the listed crimes [in § 924(e)(2)(B)(ii), such as burglary] it is a crime that 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'" *Sykes,* 131 S.Ct. at 2276 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). *See also United States v. Hill,* 645 F.3d 900, 910–11 (7th Cir.2011) (stating that in *Sykes* "[t]he Court concluded that the residual clause imposes enhanced punishment when the relevant prior offenses involved a potential risk of physical injury similar to that presented by the enumerated offenses"); *United States v. Snyder,* 643 F.3d 694, 698–99 (9th Cir.2011) (stating essentially the same). Therefore, we are bound to conclude that unauthorized entry of an inhabited dwelling under Louisiana law is a violent felony under the ACCA.

Also relevant to our decision is *James v. United States,* 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), in which the Supreme Court held that "attempted burglary, as defined by Florida law, is a 'violent felony' under ACCA['s residual clause]." *Id.* at 195, 127 S.Ct. 1586. It

analyze the definition of crimes of violence under § 4B1.2, and vice versa." *United States v. Hughes,* 602 F.3d 669, 673 n. 1 (5th Cir.2010) (quoting *United States v. Mohr,* 554 F.3d 604, 609 n. 4 (5th Cir.2009)) (internal quotation marks omitted), *cert. denied* — U.S. ——, 131 S.Ct. 3018, 180 L.Ed.2d 848 (2011).

explained that "in the ordinary case" attempted burglary under Florida law "presents a serious potential risk of injury to another" and therefore it was a violent felony. *Id.* at 208, 127 S.Ct. 1586.[4] Specifically, attempted burglary presents the "same kind of risk" as burglary: "the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *Id.* at 203, 127 S.Ct. 1586.[5] The same is true in the ordinary case of attempted unauthorized entry of an inhabited dwelling under Louisiana law. It presents the same kind of risk as unauthorized entry of an inhabited dwelling, which in turn presents a risk essentially identical to that of burglary, an enumerated violent felony: that of a "surprise confrontation with" someone attempting to intrude. *Claiborne*, 132 F.3d at 256.[6]

In light of *Claiborne*, *O'Connor*, and *James*, we agree with the Government that attempted unauthorized entry of an inhabited dwelling under Louisiana law is a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii); and, as Arteaga concedes he had two other violent felony convictions, the district court erred in failing to sentence Arteaga under § 924(e).

## IV.

For the foregoing reasons, we AFFIRM the defendant's convictions, VACATE his sentence, and REMAND for re-sentencing consistent with this opinion.

---

4. *See also United States v. Davis*, 487 F.3d 282, 285 (5th Cir.2007) ("The test articulated by *James* for determining whether an offense falls within the residual clause is 'whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.'" (quoting *James*, 550 U.S. at 208, 127 S.Ct. 1586))

5. *See also Sykes*, 131 S.Ct. at 2273 ("Burglary is dangerous because it can end in confrontation leading to violence." (citing *James*, 550 U.S. at 200, 127 S.Ct. 1586)).

6. In every reported case in which the Louisiana courts have affirmed a conviction for attempted unauthorized entry of an inhabited dwelling, there has been the possibility of such a confrontation. *See, e.g., State ex rel. W.H.*, 62 So.3d 839, 842–43 (La.App. 4 Cir. 2011) (defendant "insist[ed] on entering" the homeowner's home and "then threatened" the homeowner); *State v. Lowe*, 521 So.2d 454, 455 (La.App. 4 Cir.1988) (defendant "aw[oke]" the homeowner and "started pushing on the door and shaking the doorknob" of the home); *State v. Broadhurst*, 517 So.2d 382, 383–84 (La.App. 5 Cir.1987) (defendant "aw[oke]" the homeowner and then "attempt[ed] to open the lock to the rear window" and "then tried to force open [the homeowner's] locked rear door").