IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2014

**STATE OF TENNESSEE v. CARL C. DOTSON**

**Appeal from the Circuit Court for Williamson County**
**No. ICR016169     Michael Binkley, Judge**

_____

**No. M2014-00774-CCA-R3-CD - Filed March 31, 2015**

_____

A Williamson County Jury returned an indictment against Defendant, Carl C. Dotson, charging him with theft of property valued over $1,000 but less than $10,000 and driving under the influence of an intoxicant (DUI), third offense. A jury trial was held, and Defendant was convicted of the offenses.  The trial court imposed a sentence of two years as a Range One offender for theft to be served in confinement and eleven months, twenty-nine days for DUI to be served concurrently. The judgment for DUI indicates that Defendant is to serve 160 days of his sentence for DUI in confinement and then eleven months and twenty-nine days on supervised probation. On appeal, Defendant argues that the evidence was insufficient to support his convictions.  After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P. J., delivered the opinion of the Court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Dana M. Ausbrooks, Franklin, Tennessee, for the appellant, Carl C. Dotson.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Kim R. Helper, District Attorney General; Kelly Lawrence and Nicole Douche, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

Susan Winn testified that she lived at 3809 Perkins Road in Thompson's Station. On July 28, 2011, at approximately 11:00 to 11:30 p.m. Mrs. Winn heard a noise that she thought was one of her sons coming home. The next morning Mrs. Winn's husband woke her up and informed her that there was a car in the woods near the house. Mrs. Winn went out and looked inside the car to verify that no one was inside of it. She noted that the car appeared to be a "family" vehicle, and she found it strange that no one came to her door after the accident.

Tennessee Highway Patrol (THP) Trooper Chris Copeland responded to the scene at 3809 Perkins Road at approximately 7:29 a.m. on July 29, 2011. He observed a silver Volvo station wagon "off in the woods, no one around the vehicle." Trooper Copeland noted that there were "track marks coming from the roadway through a yard, across the driveway and off into the woods," and the vehicle was damaged. There was also a "Bud Light" container at the scene. He later had the vehicle towed to a secure lot.

James Wolff testified that he had left his silver 2001 Volvo V70 station wagon at Veach's Automotive Repair located near the Factory in Franklin on July 28, 2011, to have a sensor repaired. Mr. Wolff noted that he drove the car regularly and that it was well maintained and in good or above average condition. He testified that the business was closed when he left the vehicle, and he placed his keys in the "drop box." Mr. Wolff called Veach's Automotive on July 29, 2011, to inquire about his car. Mr. Veach informed Mr. Wolff that he could not locate the Volvo or the keys to the vehicle. Mr. Wolff and his wife then drove to Veach's Automotive Repair to check on the vehicle's whereabouts. They could not locate the car or the keys. Mr. Wolff then called police, and an officer arrived at Veach's Automotive Repair and took a report on the missing vehicle.

Mr. Wolff testified that he next saw his car a few days later at an impound lot on Columbia Avenue in Franklin. He said that the vehicle was "pretty messed up," and his wife did not recognize it. Mr. Wolff testified that his insurance company classified the car as totaled and valued the vehicle at $6,700. After the deductible, he received a check for $6,200. Mr. Wolff testified that he did not know Defendant, and he never gave Defendant permission to drive his vehicle.

Officer Scott Savage of the Franklin Police Department testified that he responded to a call at Veach's Automotive Repair on July 29, 2011, regarding the theft of a vehicle. He spoke with Mr. Wolff and took a report on a silver Volvo V70. Officer Savage then entered

information from the stolen vehicle into the National Crime Information Center (N.C.I.C.). He later notified Mr. Wolff that the vehicle had been located by Trooper Copeland and towed to Crafton's tow yard located on Columbia Avenue in Franklin. Officer Savage noted that the vehicle was damaged, and the airbags had been deployed. He also noticed a "slight odor of alcohol" from the inside of the vehicle while he was standing outside the vehicle.

Detective Chad Pace of the Franklin Police Department was assigned to investigate the theft of Mr. Wolff's vehicle. He drove to the accident site and spoke with Mrs. Winn. She advised him where the vehicle had been located, and she told him about the noise that she heard at approximately 11:00 p.m. the night before the vehicle was found. Detective Pace found a black tee shirt at the crash site which read "31 South Grill," a pair of mirrored or chrome aviator style sunglasses, a Bud Light beer can, and an "opened and used" 18-pack of Bud Light. Inside the Bud Light carton Detective Pace found a pay stub from United Carbide Industries, Incorporated that bore Defendant's name. He noted that United Carbide Industries was located across the street from Veach's Automotive Repair.

Detective Pace next drove to Crafton's tow lot and observed Mr. Wolff's car. Inside the vehicle, Detective Pace found a note written by Mr. Wolff to Mr. Veach concerning the vehicle not being able to pass the emissions test. He also found a second check stub from United Carbide Industries that bore Defendant's name. Based on the pay stubs, Detective Pace began looking for Defendant. He drove to United Carbide and found Defendant working there. Defendant had a black eye, and there were scratches on his face. Detective Pace noted that Defendant's injuries were consistent with other injuries that he had seen caused by the deployment of an airbag.

Defendant was unable to clearly or accurately explain his injuries to Detective Pace, and Detective Pace asked Defendant to speak with him at the police department. Defendant was very cooperative, and Detective Pace later interviewed Defendant. Detective Pace testified that Defendant was vague about how he had gotten the black eye, and he said that his wallet had been stolen. Defendant ultimately said that he had been drinking heavily one day and apparently lost his wallet or left it in a gas station bathroom. Defendant also said that his sunglasses had been taken from him. He described them "as sort of a chrome aviator style sunglasses."

When asked about the stolen Volvo, Defendant told Detective Pace that he had spoken with the owner of Ace's Transmission and heard that it may have been stolen by some "black dudes." Defendant denied taking the vehicle and said that he had an alibi. He claimed that he had been drinking moonshine at Ace's Transmission located adjacent to Veach's Automotive Repair at the time of the theft. Defendant told Detective Pace that he was very

intoxicated at the time and had "blacked out." Defendant was later patted down by Officer Carson, and Defendant's wallet was located on his person.

Detective Pace drove to the Mapco located at the corner of Harpeth Industrial Court and Franklin Road. He was hoping to see if Defendant had purchased an 18-pack case of Bud Light at the store prior to the accident. Detective Pace reviewed surveillance video from July 28, 2011, and he located Defendant on the video. He could also see a portion of the parking lot, and he saw a vehicle similar in description to Mr. Wolff's Volvo pull into the parking lot. Shortly thereafter, Defendant and someone named Trent Schaffer walked into the Mapco. Detective Pace noted that Defendant went into the store two times and made purchases. The second purchase was an 18-pack of Bud Light. Defendant was wearing a black t-shirt with a "31 South Grill" logo on it, and he appeared to have a pair of "chrome aviator style sunglasses on his head." According to the surveillance videos, Defendant entered Mapco the first time at 9:29 p.m. on July 28, 2011, and the second time at 10:51 p.m.

Officer Megan Valentin of the Franklin Police Department testified that she responded to a suicide call on August 4, 2011, at approximately 9:35 p.m., at 1113 Harpeth Industrial Court. The business was closed at the time. Officer Valentin received information that the Defendant was suicidal and was armed with a weapon. She located Defendant inside the business standing next to a desk. Defendant told Officer Valentin that the weapon was lying on the desk, and she asked him to step outside the building where he was searched and then asked to sit in a chair in front of the business. Officer Valentin spoke with Defendant who indicated that he was in trouble and wanted to make things right. Defendant told Officer Valentin that he stole a car from Veach's Automotive Repair located across the street. He said that he took the car to visit a girlfriend with whom he was having a dispute, and he wanted to visit her. The woman lived on Perkins Road in Nashville. Defendant told Officer Valentin that he had taken the keys to the car out of the drop box at Veach's Automotive Repair by using a coat hanger to "fish them out." Defendant indicated that he drove the vehicle twice and then crashed it the third time. He believed that when he was driving down Perkins Road and cresting a hill, a spring in the vehicle separated causing him to crash the car. Defendant told Office Valentin that he was drunk on moonshine and vodka prior to taking the vehicle. Officer Valentin reviewed the recording of the 911 call from the evening of August 4, 2011, and identified her voice and Defendant's voice on the recording.

On cross-examination, Officer Valentin testified that prior to arriving at the scene at 1113 Harpeth Industrial Court, she was advised that Defendant was suicidal and possibly had razor blades. Officer Valentin testified that Defendant appeared to be intoxicated but he was cooperative. Defendant was then transported by ambulance to the Williamson Medical Center.

**II. Analysis**

Defendant challenges the sufficiency of the evidence for his convictions for theft of property valued over $1,000 but less than $10,000 and for DUI. He argues that he had no intent to deprive Mr. Wolff of his vehicle therefore, the proof supported a conviction for joyriding rather than theft of the vehicle. Defendant further asserts that his confession to DUI was not sufficiently corroborated. We disagree.

When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

To support Defendant's conviction for theft of property valued at more than $1,000 but less than $10,000, the State was required to prove that Defendant violated Tennessee Code Annotated section 39-14-103, which states: "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over property without the owner's effective consent."

Defendant contends that he did not intend to deprive Mr. Wolff of his vehicle. Therefore, Defendant argues that he should have been convicted at most of joyriding. The unauthorized use of a vehicle, also referred to as "joyriding," occurs when a person "takes another's automobile, airplane, motorcycle, bicycle, boat or other vehicle without the consent of the owner and the person, does not have the intent to deprive the owner thereof." T.C.A. § 39-14-106. Viewing the evidence in a light most favorable to the State, the proof showed that Mr. Wolff left his 2001 Volvo station wagon at Veach's Automotive Repair on July 28, 2011, to have a sensor repaired. When he called to check on the vehicle the following day, Mr. Wolff was informed that the vehicle was missing. At that time, he did not know that it had been located earlier that morning at 3809 Perkins Road in Thompson's Station crashed

into the woods. Trooper Chris Copeland responded to the scene and noticed that no one was around the vehicle, and it was damaged. Susan Winn, who resided at the Perkins Road address, testified that she heard a noise the previous night at approximately 11:00 to 11:30 p.m. She noted that no one came to her home to report the accident.

Detective Chad Pace drove to the accident site and found a black t-shirt with a "31 South Grill" logo, a pair of mirrored or chrome aviator sunglasses, a Bud Light Beer can, and an "[o]pened and used" eighteen-pack of Bud Light beer. Inside the Bud Light carton was a pay stub from United Carbide Industries, located across from Veach's Automotive, that bore Defendant's name. Detective Pace then drove to the tow lot to look at Mr. Wolff's car. Inside the vehicle Detective Pace found a note written to Mr. Veach from Mr. Wolff about the car, and there was a second pay check stub from United Carbide Industries bearing Defendant's name.

Detective Pace drove to the Mapco located at the corner of Harpeth Industrial Court and Franklin Road. He reviewed video surveillance from July 28, 2011, and located Defendant on the tape. Detective Pace could see a portion of the parking lot, and he saw a vehicle similar to Mr. Wolff's vehicle pull into the parking lot. Shortly thereafter, Defendant and Trent Schaffer walked into the Mapco. He said that Defendant was in the store a total of two times that night and made purchases. On the second visit, at 10:51 p.m., Defendant purchased an 18-pack of Bud Light. Defendant was wearing a black t-shirt with a "31 South Grill" logo on it, and he appeared to have a pair of "chrome aviator style sunglasses on his head." Detective Pace interviewed Defendant who denied taking the vehicle. Defendant also said that he had an alibi and that he heard the vehicle had been stolen by some "black dudes."

On August 4, 2011, Defendant called 911 and was threatening to commit suicide. He told the 911 operator that he "stole a car" and "wrecked it." When Officer Megan Valentin arrived to speak with Defendant, he told her that he wanted to make things right. He told Officer Valentin that he had stolen a car from Veach's Automotive located across the street. Defendant had used a coat hanger to "fish" the keys out of the drop box at Veach's. Defendant said that he took the car the visit a girlfriend that he was having a dispute with who lived on Perkins Road. He indicated that he drove the car twice on July 28, 2011, and then wrecked after the third time that he took it. Defendant noted that the accident occurred on Perkins Road.

Mr. Wolff testified that his insurance company classified the Volvo as totaled and valued the car at $6,700. After the deductible, he received a check for $6,200. Mr. Wolff testified that he did not know Defendant, and he never gave Defendant permission to drive the vehicle. We note that at no time after the accident did Defendant notify Mr. Wolff, Mr. Veach, or anyone else that the car had been wrecked.

The difference between theft of a vehicle and joyriding is the intent of a defendant. As between the two offenses, a defendant is guilty of theft if the intent of the defendant is to deprive the owner of the vehicle. The statutory definition of "deprive" for the purposes of this case includes that it means to "[w]ithold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." T.C.A. § 39-11-106(8)(A). When a defendant only had another's vehicle for "twenty or thirty minutes" before wrecking into the bedroom of an apartment at the conclusion of a high speed police chase, and he admitted he had stolen the vehicle, there was sufficient evidence to prove the defendant had the intent to deprive the owner of the vehicle. *State v. James McClennon*, No. 2002-00153-CCA-R3-CD, 2003 WL 21458671 (Tenn. Crim. App. June 24, 2003).

Based on the evidence presented a rational juror could conclude that Defendant committed the offense of theft of property valued at more than $1,000 but less than $10,000. Moreover, the jury was instructed on the lesser-included offense of joyriding and rejected it as was its prerogative. This issue is without merit.

Defendant also argues that the proof was insufficient to support his conviction for DUI because there was no proof to corroborate his confessions. As applicable here, it is unlawful for any person to drive or be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or in any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of clearness of mind and control of himself which he would otherwise possess; or

T.C.A. § 55-10-401(1).

A criminal conviction cannot be based solely on a defendant's uncorroborated confession. *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). The Tennessee Supreme Court has adopted the "modified trustworthiness standard" in determining whether a confession is sufficiently corroborated. *State v. Bishop*, 431 S.W.3d 22, 58 (Tenn. 2014). In *State v. Clark*, 452 S.W.3d 268 (Tenn. 2014), the Supreme Court stated:

> In *State v. Bishop,* 431 S.W.3d 22 (Tenn.2014), we recently clarified the corroboration rule in Tennessee. Tennessee follows the "modified

trustworthiness standard" rather than the traditional *corpus delicti* rule. *State v. Bishop,* 431 S.W.3d at 59-60. We explained that under this standard:

> When a defendant challenges the admission of his extrajudicial confession on lack-of-corroboration grounds, the trial court should begin by asking whether the charged offense is one that involves a tangible injury. If the answer is yes, then the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, plus independent prima facie evidence that the injury actually occurred. If the answer is no, then the State must provide substantial independent evidence tending to show that the defendant's statement is trustworthy, and the evidence must link the defendant to the crime.

*State v. Bishop*, 431 S.W.3d at 60. "Prima facie" evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." Black's Law Dictionary 638-39 (9th ed.2009). "Substantial evidence" is "[e]vidence that a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla." Black's Law Dictionary 640 (9th ed. 2009).

"The corroboration requirement is a low threshold. Its purpose is twofold: to weed out false confessions to nonexistent crimes (by requiring some independent evidence that the injury occurred) and to weed out false confessions to actual crimes (by requiring some independent evidence that implicates the accused). *State v. Bishop*, 431 S.W.3d at 59-60. The standard of proof required to clear this hurdle is even lower than the "preponderance of the evidence" standard. *State v. Bishop*, 431 S.W.3d at 60 n. 33 (quoting *Smith v. United States*, 348 U.S. at 156, 75 S.Ct. 194).

*Clark*, 452 S.W.3d at 279-80.

In this case, there was sufficient evidence to corroborate Defendant's confessions. As set forth above, there was sufficient evidence to show that Defendant stole Mr. Wolff's Volvo station wagon. Defendant told both the 911 operator and Officer Valentin that he was drunk when he stole Mr. Wolff's car and then wrecked it on Perkins Road. He said that he had been drinking vodka and moonshine at the time, and he told Officer Valentin that he had taken the vehicle a total of three times on the night of July 28, 2011. Defendant

acknowledged that he was seen on video surveillance at the "Rapideye" Mapco purchasing beer that same night.

Defendant's confessions were corroborated by the fact that a Bud Light Beer can and an "[o]pened and used" 18-pack case of Bud Light was found at the accident scene. On July 29, 2011, Officer Scott Savage drove to the tow lot where Mr. Wolff's car was taken after the accident, and Officer Savage noticed a "light odor of alcohol" coming from the outside of the vehicle. Defendant was also seen on video surveillance from July 28, 2011, that Detective Pace obtained from Mapco showing that a car similar to Mr. Wolff's pulled up at 10:51, and Defendant walked in and purchased an 18-pack of Bud Light. Mrs. Winn had testified that she heard a notice outside of her home at approximately 11:00 to 11:30 p.m. on the night of the accident, and she found the wrecked Volvo the next morning with no one around it.

The testimony provided substantial independent evidence tending to show that Defendant's incriminating statements to Officer Valentin and the 911 operator were trustworthy, and the evidence linked Defendant to the crime. Therefore, a rational juror could conclude that Defendant committed the offense of DUI. Defendant is not entitled to relief on this issue.

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE